LUTHER M. KENT *v.* THE TOWN OF LINCOLN.

*Notice. Pleading. Evidence. Highway. Practice.*

In an action against a town for damage sustained through the insufficiency of a highway, the plaintiff need not aver in his declaration that he gave notice to the selectmen of such town of the injury and his intention to claim satisfaction therefor, as required by statute (Acts of 1855, No. 15, p. 18.) Such notice is no part of the cause of action, but pertains merely to the remedy and evidence.

In actions against towns for injuries alleged to be sustained in consequence of the insufficiency of a highway, evidence of the effect on carriages driven by other persons than the plaintiff, over the same road, has a tendency to show

its fitness or unfitness for public travel, and is therefore competent, whether such carriages are like that driven by the plaintiff, or not, and notwithstanding no evidence be given as to the rate of speed, or degree of care with which they were driven.

One who has brought an action for personal injuries may prove, as tending to show their nature and extent, his own statements made, while suffering under such injuries, to an examining physician in regard to his inability to move certain portions of his frame, and the pain produced by other motions, notwithstanding such examination was made by the physician after the commencement of the suit, and with a view of being a witness at the trial in regard to the character of the plaintiff's injuries.

If, in the close, the plaintiff introduce proof of a new and distinct fact, not fairly notified to the defendant by the opening proof, so as to enable him to answer it in his general evidence, he must be allowed to answer or contradict it afterwards, and it is error for the court to refuse him the opportunity to do so.

CASE for an injury to the plaintiff, occasioned by the insufficiency of a highway which the defendant was bound to keep in repair. Plea, the general issue, and trial by jury, at the June Term, 1859,—BENNETT, J., presiding.

No question was made but that the plaintiff, on or about the 3d day of May, 1858, received a personal injury by being thrown from his wagon while crossing a water bar upon a highway, which it was the duty of the defendant to keep in repair. The defense was placed upon the grounds that the water bar was a proper and suitable one in that place; that the road was not out of repair, and that the plaintiff was thrown from his wagon, and the injury occasioned, by reason of the king bolt of his wagon being too short and not properly secured, and by his driving in a careless and reckless manner.

The plaintiff, for the purpose of establishing the insufficiency of the road, by the testimony of F. P. Wheeler and Dr. Hasseltine, offered to prove that about the time of the accident they each passed over this road in a vehicle called a sulky, one in the day time and the other in the night, and that in crossing the water bar at the place where the injury was received, they were each thrown from their seats, and nearly out of their vehicles, and by sundry other witnesses that they had driven along the road at the point in question, and had been jolted or thrown from their seats

at various times during the period of five months before the happening of the injury. This evidence was objected to by the defendant, but admitted by the court, and the defendant excepted. The witnesses severally testified according to the offer, but did not state anything, nor were they questioned by either party, in relation to the manner in which they were driving at the several times when they passed over the water bar.

The plaintiff called several physicians or surgeons to show the character and extent of the injury received and its probable permanency, one of whom, Dr. Russell, testified to a very full personal examination of the plaintiff's injuries, made by him four or six weeks before the trial, and long after the commencement of the suit. And in detailing the results of the examination, the witness stated, under objection from the defendant, the declarations and statements made by the plaintiff during the examination, as to the effect and pain at the time produced by certain movements of his arm and other parts of his body ; also as to his inability at that time to move his arm in a certain direction, which statements the court admitted as a part of the examination. It appeared that this examination was made in order that Dr. Russell might be a witness on the trial to show the nature and extent of the injury. To the admission of Dr. Russell's testimony, as to these statements of the plaintiff, the defendant excepted.

Evidence tending to show various measurements of the water bar was introduced. The direct evidence of the plaintiff tended to show that shortly after the injury, the depression at the side of the water bar was partially filled up, but that at a measurement of the bar made by one Bush and other witnesses on the part of the plaintiff, the dirt thus thrown in was removed and the bar measured as it was when the injury was received. The defendant produced a pattern of the water bar made four or five days after the measurement by one Bush and others, and introduced evidence tending to show that when the pattern was made, the bar was in the same condition as when the Bush measurement was made. The plaintiff then recalled Bush and was permitted to give evidence from him and others tending to show that after they finished measuring, and at the same time, he replaced the dirt thus removed as they found it. The defendant then offered to give

39

evidence from Charles Clark and others, tending to show that they were present at the time the Bush measurement was made, and that Bush did not replace the dirt in the manner his testimony tended to prove. This was objected to by the plaintiff, and rejected by the court, as being offered out of time, to which the defendant excepted.

The jury rendered a verdict for the plaintiff, whereupon the defendant moved that judgment be arrested on the ground that the declaration was defective and insufficient, because it contained no allegation that any notice was given by the plaintiff to the selectmen of the defendant town of his intention to claim damages for the injury within thirty days, after it was sustained, according to the statute, but the court *pro forma* overruled the motion in arrest, to which the defendant excepted.

Evidence by parol was introduced on the trial, without objection, of the giving of such notice, and no question was made to the jury as to the sufficiency of this evidence to establish the fact.

*F. E. Woodbridge* and *E. J. Phelps*, for the plaintiff.

*J. W. Stewart* and *Roberts & Chittenden*, for the defendant.

POLAND, J.   I. The question raised by the motion in arrest is whether it was necessary for the plaintiff to set forth in his declaration that, within thirty days after his injury upon the highway, he gave notice to one of the selectmen of Lincoln of the same, and that he should claim damages of the town therefor. It is not claimed by the plaintiff but that his case comes within the act of 1855, requiring such notice to be given in all this class of cases, arising subsequent to that act.   It is insisted on the part of the defendant that this notice is a necessary element of the plaintiff's cause of action against the town, that it is a condition precedent, which must be performed by the plaintiff before any right accrues to him, or exists, to recover damages of the town.

If this be the true nature of this requirement, then it ought to be averred in the declaration, because that should set forth all such facts as are necessary in order to show that the plaintiff has

a legal cause of action against the defendant. But upon an examination of the statute, and taking its language in connection with the evident object and purpose of the enactment, we think this is not its true character and purpose, that the cause of action is complete and perfect, when the plaintiff has sustained special damage by reason of the insufficiency of a highway, and that this notice, which is required to be given, is only a step in the process for enforcing the legal remedy, and though it must be taken and may be required to be proved, it need not be set forth in the declaration that sets out the cause of action.

The act of 1855 bears some analogy to the statute of limitations. The plaintiff is not required to commence his suit within thirty days after the injury, but he is required to give notice within that time that he intends to prosecute his claim, and if he does not take this step his right to recover is barred. The analogy is not perfect between this act and the statute of limitations, because a defendant, to take the benefit of the statute of limitations, must ordinarily set it up specially by plea, and if he does not the defence is waived.

But this notice being an act required to be done by the plaintiff, a fact peculiarly within his knowledge, he would be required to show that he had complied with this preliminary requisite to the sustaining his action. There is also a close analogy between this case and the decisions that have been made under the statute of frauds, and various other statutes which have required some new thing to be done in order to make certain contracts valid in law, which before were good though in parol merely. The statute of frauds requires certain classes of contracts to be in writing, and the plaintiff, in a suit upon such contract must prove it to be in writing, but the declaration need not aver it to be so. The reason given is, that the statute has not altered the rules of pleading, but only requires that the contract shall be proved in a particular manner, and the party may declare in the same manner as before the statute. But in such case it enters into the cause of action itself, and if the party cannot show the contract to have been in writing, &c., he shows no cause of action whatever. In this case the action was originally given by statute, and not by the common law, but it existed long before this statute, indeed,

since the earliest legislation in the State, and this principle may aptly apply to it. There is no doubt at all that where a notice of a particular fact to the defendant is necessary in order to make out a cause of action against him, either by express contract or by implication of law, such notice must be averred in the declaration, because without such averment the declaration shows no cause of action. A declaration against the endorser of a note is a familiar instance of this ; the declaration must allege notice of the non-payment by the maker, because without such notice the endorsee is not liable.

The object of this statute is apparent enough from the statute itself, and the reasons and history of its passage are well known. When a person actually sustains damage upon a highway, the fact may not be known to the authorities of the town, or if that be known, it may not be known that any claim will be made against the town. All towns have many miles of highways, and the town authorities are constantly shifting among many different persons. If no claim be made upon the town at the time, and no notice given that any will be made, no examination of the highway is made, and when after the lapse of years a claim is set up, and when the condition of the road has been entirely altered by the changes of the seasons and repairs, it often becomes difficult for a town to show what was the actual condition of the road at the time of the injury. Still greater is the danger when an unfounded and false claim is made for damages pretended to have been sustained years before the claim is set up. It was to remedy these evils that the statute was passed, that the authorities of the town might know· within thirty days of the claim, and thus have a full opportunity to have the road thoroughly examined, and ascertain all the circumstances attending the injury complained of.

It is said that another object was to enable the town to tender amends to the claimant. But we think this could have had very little to do with it, for as the law was then, no tender could be made in the case of personal injury, and where a tender could be made at all, it might be made at any time whenever a suit should be brought. Whether this notice must be given before the action is commenced, and if not, whether, if a suit is actually com-

menced within the thirty days, any further notice need be given, are questions that need not now be decided.

What we decide is that this notice is not a part of the plaintiff's cause of action, that it pertains to the remedy and evidence merely to enforce and support his claim, and need not be set forth in the declaration.

II. The testimony of Wheeler, Hasseltine and others as to the effect produced upon their carriages in passing over the water bar, was ·correctly admitted. One important point in the case, and in all this class of cases, is whether the condition of the road was such as to make it insufficient and unsafe for public travel. The effect, which this bar had upon a carriage passing over it, would aid in determining that question, whether the carriage driven over it was like the one the plaintiff drove or not. The effect on any carriage would be proper to be considered by the jury. The main objection made to this evidence is that it was not shown that these persons drove with reasonable prudence and care, and that as the plaintiff could not recover unless he used such prudence and care in driving, therefore no effect of the road upon a carriage was proper evidence, unless proved to be driven in that manner. But we think this does not follow, and that it might be shown what effect was produced on a carriage driven at a speed conceded to be unreasonable and unsafe for an ordinary traveler. All these effects produced in going over the road were in the nature of experiments to show the actual condition of the road at the time, and whether it was safe or unsafe. The more minutely and clearly each one was understood by the jury, the rate and manner of the driving, the kind of the carriage used, and the exact effect produced upon it, the more valuable would the evidence become, but neither party could make such evidence improper by omitting enquiries that would elicit all these particulars.

III. The statements of the plaintiff made to Dr. Russell, and testified to by him, were correctly admitted; that relating to his inability then to move his arm in a certain direction, as well as the rest. Mr. GREENLEAF says " so also the representation, by a sick person, of the nature. symptoms and effects of the malady under which he is laboring at the time, are received as original

evidence. If made to a medical attendant, they are of greater weight as evidence; but if made to any other person, they are not on that account rejected;" 1 Vol. Ev. sec. 102. His complaint that he was unable to move his arm was as admissible as a complaint of pain in his arm or his head. The weight of these statements are always to be determined by the jury, and unless the external symptoms and appearances of the person correspond with, and support his statements and complaints, they usually have very little weight. This species of evidence was undoubtedly admitted originally and mainly because parties could not testify, and this was the only mode of proving it, but it is equally admissible now, though the necessity is less. That they are made during the pendency of the suit, does not render them inadmissible, though it would generally doubtless detract from their weight.

IV. The only remaining point is, as to the correctness of the exclusion of the testimony of Clark and others offered to contradict Bush. Were the defendants legally entitled to have that evidence admitted when offered? If the defendants had not the strict legal right to have it admitted then, and it rested in the discretion of the judge below, whether he would depart from the ordinary rule of practice and admit it, then we cannot revise his decision; whether he decided to adhere or to depart from the rule, his decision, when it rests in discretion, is conclusive.

The general rule in relation to the order of evidence is well established in this State. The plaintiff is entitled to rest upon making a *prima facie* case. The defendant is then to introduce all his evidence in answer to the plaintiff's claim. The plaintiff is then allowed to introduce testimony to rebut the evidence given by the defendant, and also additional evidence in support of his case as made in the opening, and ordinarily this closes the evidence.

But in practice these general rules have always been so applied, (and in justice should be,) as to give each party an opportunity to answer and controvert every fact, and to contradict or impeach any witness introduced by the opposite party. If a witness be called for the first time by the plaintiff in the close, the defendant must afterwards be allowed, if he wishes, to

impeach such witness by evidence to show his general bad character or otherwise, as he may be able. So, too, if in the close the plaintiff introduces proof of a new and distinct fact, not fairly notified to the defendant by the opening proof, so as to enable the defendant to answer it in his general evidence, he must be allowed to answer or contradict it afterwards, and the court have no discretion to refuse him the opportunity to do so, and their refusal would be error. It appears by the exceptions that the plaintiff in his opening evidence proved a measurement of the bar in the road by Bush and others. The defendant then introduced evidence of a measurement made after that of Bush, and a plan to exhibit it, showing the inequality in the road to be less than that made by the measurement of Bush and the plaintiff's other witnesses, and also that the road was then in the same condition as when measured by Bush. It does not appear precisely what the defendants' evidence was to show the condition of the road to be the same, but the fair inference is that it was from witnesses who saw it when Bush measured it, or who knew the condition of the road before. The plaintiff, in his reply, recalled Bush, who testified that after he made his measurement and before the defendants' measurement was made, he (Bush) filled up the depression by the side of the water bar, so that the condition of it was changed and the depression less than when he measured it.

The defendant then offered to prove by Clark and others that they were present at the time Bush testified to having filled up the depression, and that he did not fill it up as he stated. It does not appear from the exceptions that this fact was attempted to be proved in the opening by the plaintiff, or that any proof was given that would fairly advertise the defendant, that such proof would be given in the close. If therefore the defendant was not allowed to contradict this after Bush testified last, it does not appear that he had any opportunity to do it at all. For aught that appears the only evidence of the defendant to show the road, when his measurement was made, to be in the same condition as when measured by Bush, and when the accident occurred, was the general observation and opinion of witnesses who had seen the road. Evidence of this character would be very likely over-

borne by the evidence of a single witness who should swear that he in fact changed its condition. Evidence to show directly that his statement on that subject was false, was clearly admissible to contradict and impeach the witness, and we think from what appears that this distinct and important fact, having been brought forward for the first time in the close, the defendant ought to have been permitted to introduce evidence to disprove it, that it was not within the proper discretion of the court to refuse it, and the refusal is error. For this reason alone, the judgment is reversed, and a new trial granted.