HORACE F. CLARK *v.* JAMES BOARDMAN.

*Trespass. Evidence. Adverse Possession. Malice. Damages. Requests to Charge. Close Jail Certificate.*

Whether an act of trespass was malicious or not is for the court to determine on an application for a certificate under the statute.

The declarations of the defendant, made to the plaintiff after the trespass was committed, are not admissible to show that the motive of his acts was not malicious.

In this action of trespass *q. c. f.* the defendant, in the course of the trial, offered to show, as bearing upon the question whether one of the alleged acts of trespass, the cutting of a certain tree, was wilful or not, that a short time after the tree was cut the defendant said to the plaintiff, in answer to inquiries, in substance, he cut the tree because he thought he owned it; that he claimed it on the ground of adverse possession; that the defendant said the tree is good for nothing, the top is dead, we will have no trouble about it, or if you want shade trees I will set out a hundred

for you, if the tree is yours; that the plaintiff threatened him, and would not talk about settling. *Held* that the testimony was properly excluded.

Where, under a request to the court to charge that the plaintiff could not recover for a trespass committed on a certain specified piece, because not described in the declaration, and the court charged that the plaintiff could not recover for any trespass proved that was not committed on the premises described in the declaration. it was *held* to be a substantial compliance with the request; it being a question in the case for the jury to determine whether said piece was embraced within the description of the *locus in quo* in the declaration.

Where, under a request to charge that the plaintiff was not entitled to recover for any damages done by breaking down or removing any fences, because none are declared for, the court charged that the breaking and entry was the substantive ground of the action, and so far as this was effected by the act or means of breaking down a fence belonging to the close, the damage occasioned thereby might properly be taken into consideration as a part of the damage to be recovered, it was *held* correct. The plaintiff, in actions of this kind, can recover for the natural and necessary consequences of the act charged.

Where there is no evidence to warrant a request, or a charge in accordance with it, the court sh uld not charge as requested, though the request contain a correct legal proposition in itself.

TRESPASS *quare clausum fregit*, whereby the plaintiff claimed to recover for the cutting of a certain elm tree, and for damages occasioned by the eating and destroying by cattle of the grass and herbage growing on a close of the plaintiff, in Bennington, on the 5th day of September, 1865, "and on divers other days and times between that day and the commencement of this suit,"—the said acts of trespass being alleged to' have been committed by the defendant. Plea, not guilty. Trial by jury, December term, 1866, KELLOGG, J., presiding.

On trial, the plaintiff introduced as evidence a deed of warranty from Heman Swift and Ruth, his wife, to John P. Harwood, dated April 5, 1855, and a like deed of warranty from Perez Harwood, Jr. and the said John P. Harwood to himself (the plaintiff,) dated August 24, 1865. It was not questioned that these included and conveyed the land on which the plaintiff's evidence tended to prove that those acts of trespass were committed, and that the said land formed part of the farm known and called for a period of fifty years or more as "the Governor Robinson farm," and adjoined land belonging to the defendant which was called "the Hicks farm." · The plaintiff's evidence showed that Moses Robinson, a son of the first Governor Robinson, was in pos-

session of the Governor Robinson farm about fifty years or more ago, and continued in such possession until his decease, which occurred many years before 1855, and that, on his decease, that farm descended to his daughter, Ruth, who was the wife of Doctor Heman Swift, and that the said Doctor Heman Swift and his wife went into possession of it immediately after the decease of her father as aforesaid, and continued in such possession until the time of the execution of their deed to the said John P. Harwood as aforesaid ; and that, on the execution of the said last mentioned deed, the said John P. Harwood went into the possession of the said farm, and continued in such possession until he went into the military service of the United States in 1861, and that, when he went into the said military service, he conveyed the said farm to his father, Perez Harwood, (before mentioned as Perez Harwood, Jr.,) by a deed which was never put upon record; and that on the execution of the last mentioned deed, the said Perez Harwood went into possession of said farm, and continued in such possession until the said 24th day of August, 1865, when he and the said John P. Harwood conveyed the said farm to the plaintiff, by deed as aforesaid ; and that, on the execution of said last mentioned deed, the plaintiff took possession of the said farm, and continued in such possession from that time up to the time of the commencement of this suit. The plaintiff claimed, and his evidence tended to show, that the true boundary line between the Governor Robinson farm and the Hicks farm, where those farms adjoin each other, on the Walloomsac River, was the thread of that stream, and that this boundary line had been acquiesced in and recognized by the successive owners of the Hicks farm for a period of more than forty years. One of the acts of trespass, for which the plaintiff claimed to recover, was the cutting by the defendant of an elm tree, as hereinafter mentioned, which was situated on the south side of that river on a narrow strip of land lying between the river and an old highway leading from the bridge called the Governor Robinson bridge, to the bridge called the Meach Hole bridge, known as the Hinsdill road, which was discontinued in the year 1861, and the land inclosed in this strip is hereinafter referred to as "the strip." On the discontinuance

of the said highway in 1861, as aforesaid, a new highway was laid out and opened between the same terminal points, but further south from the river than the old highway, so that there is a piece of land containing by estimation about ten acres, including therein the said strip above mentioned, lying between this new highway and the river, and this piece of land is near what is called the Governor Robinson bridge, and is a part of the Governor Robinson farm which was conveyed to the plaintiff as above mentioned, and is hereinafter referred to as " the ten acre piece." Another piece of the Governor Robinson farm, which was conveyed to the plaintiff as above mentioned, is known and called as the " Slocum piece," and is located on the south side of a branch of the said river, which is known as and called the Roaring Branch, and the same is hereinafter referred to as " the Slocum piece." The plaintiff's evidence tended to prove that some of the other acts of trespass complained of in his declaration were committed on that part of the said Governor Robinson farm called " the ten acre piece " above mentioned, and that the remainder of the said acts of trespass complained of in his declaration (exclusive of those above mentioned, that is to say, exclusive of the cutting of the said elm tree as aforesaid, and of the said acts of trespass committed on the said " ten acre piece" as aforesaid,) were committed on the " Slocum piece," above mentioned. The plaintiff's evidence also tended to show that the defendant, on several occasions, turned cattle into " the ten acre piece," and on other occasions into " the Slocum piece," but that, on those occasions, he claimed that he had a right to do so, and that the plaintiff's agents must not turn them out; and the plaintiff's evidence also tended to show that on one or more of the occasions when the defendant broke and entered into " the Slocum piece " as aforesaid, he, the defendant, did so by breaking down portions of the fence on the said " Slocum piece." The plaintiff's evidence further tended to show that the defendant, on or about the 5th day of September, 1865, at a very early hour in the morning, entered upon the strip of land herein before mentioned as " the strip," and proceeded to cut down a large elm tree thereon standing; that an agent of the

plaintiff, hearing the chopping, went to the place where the defendant was so at work, and found the tree about two-thirds cut through, and asked the defendant what he (the defendant) was doing, and that the defendant replied in substance that he was going to make a fence to stop the cattle, and was cutting that tree, and was going to cut some other trees, there standing and growing, for that purpose; that the plaintiff's agent thereupon objected, and the defendant ceased chopping. This tree was from six to ten rods south of the thread or center of the river.

The defendant gave evidence tending to show that he purchased the Hicks farm [ except " the Slocum piece,"] in the summer of 1855, but occupied it for two years next before that time, under a lease from Thomas McDaniels, who was then the owner of it; and that when he first occupied it there was a fence standing on the north side of the Hinsdill road above mentioned, which then run along near the south bank of the river, and that this fence run from four to six feet south of the elm tree and that this fence was kept in repair by him, and had previously been kept in repair, from the year 1827, when the Hinsdill road was laid out and opened, up to the time when he first commenced occupying the said Hicks farm, by the owners of that farm; and that he continued to keep the same in repair until it was removed, as hereinafter mentioned; and that, when he first went into the occupancy of the said Hicks farm, he occupied up to that road fence by cutting the grass that grew on " the strip " near the elm tree above mentioned, in each of those two years. The evidence showed that this fence was frequently washed away by freshets, but was generally [and always, if by any one,] kept up and supported by the owners or occupants of the Hicks farm until the new road was laid out further south, and opened in 1861, as above mentioned, when a fence was built on the north side of that road, and that these were the only fences between the two farms above mentioned, except so far as the river itself served the purpose of a fence by preventing the passage of cattle, but the river did not ordinarily prevent the passage of cattle. It appeared that after the new road was opened in 1861, and while the defendant was

under guardianship as an insane person, the fence on the north side of the old road was removed by the said Perez Harwood, and placed on the line of the new road, and there has been no fence since that time between the north line of the new road and the river. There was no evidence tending to show that the defendant's occupancy of " the strip " above mentioned, as the lessee of the said Thomas McDaniels, was exclusive, or under any claim of right to the same, or that the said McDaniels, or any of the grantors in the chain of title under which he held the Hicks farm, ever claimed any right or title to the said strip, or that the said McDaniels, or the then owner or owners of the Governor Robinson farm, had any knowledge or information that this strip was in any manner occupied by the defendant while he was the lessee of the said McDaniels. After the defendant purchased the Hicks farm, as aforesaid, he sometimes, between that time and the time of the laying out and opening of the new road in 1861, cut the grass growing on this strip, and it was sometimes cut by the said John P. Harwood, but the plaintiff, when introducing his rebutting testimony, gave evidence tending to show that, on one occasion, when the defendant so cut the grass on this strip—either in 1857 or 1858—it was under a license or permission from the then owner of the Governor Robinson farm, granted on the defendant's application for the privilege of doing so. The defendant denied that he ever made any such application to the owner of the Governor Robinson farm for that liberty or privilege. The defendant made no claim of any right in or to any of the land upon which the alleged acts of trespass were committed, except " the strip " above mentioned; and he denied that he broke down any of the plaintiff's fence, and he also denied that he turned cattle into " the Slocum piece," or " the ten acre piece," and claimed that if his cattle got into " the Slocum piece " at all, they must have got in under the Meach Hole bridge. The plaintiff did not claim to recover in respect to any other acts of trespass by cattle than those in respect to which his evidence tended to show, either that the cattle were turned into or upon his land by the defendant in person, or that they were owned and kept by the defendant.

The defendant, in the course of the trial, offered to show, as bearing upon the question whether the alleged act of trespass in cutting into the said elm tree was wilful or not, that, a short time after the said tree was cut by the defendant as aforesaid, the plaintiff met him, and inquired if he [ the defendant ] was the man who cut the tree; that the defendant told him that he was; that the plaintiff asked why he cut it, and that the defendant replied that it was because he thought he owned it, and that he wanted it to build a fence with; that the plaintiff asked why he claimed it, and whether it was on the ground of adverse possession, and the defendant said that it was; that the plaintiff asked why he [ the defendant ] went in the night and cut it, and the defendant replied that he did not; that the plaintiff said, " then the facts have been wrougly reported;" that the defendant said, " the tree is good for nothing—the top is dead," and that the plaintiff replied " no matter if it is—your top is dead;" that the defendant said, " we have no need to have any trouble about it, if the tree is yours I will pay you well for it, or if you want shade trees, I will set out a hundred for you, if the tree is yours;" that the plaintiff then said, " there is no use in talking about settling, I will teach you not to cut trees, I will take every dollar from your old gray head before I get through with you." This testimony was objected to by the plaintiff, and excluded by the court; and to the decision of the court by which the same was excluded the defendant excepted.

The defendant did not claim, on the trial, that he had any right or title in the Hicks farm otherwise than under and by virtue of his deed from Thomas McDaniels, dated July 23, 1855, a copy of which was put in evidence. The defendant claimed, and requested the court to charge the jury as follows:

1.  That the plaintiff was not entitled to recover for any trespass they might find to have been committed by the defendant on " the Slocum piece," because " the Slocum piece " was not covered by the description of the *locus in quo* in the plaintiff's declaration.

2.  That the plaintiff was not entitled to recover for any damaages done by breaking down or removing any fences, because none are declared for.

3.  That if the jury found that the defendant, or his grantors, were in the adverse possession of the land between the road and the river at the time when the said John P. Harwood took his said deed from the said Heman Swift and Ruth, his wife, as above mentioned, then the said deed was void as to this land, and the plaintiff could not recover for any act of trespass committed on that land.

4. That if the jury found that the defendant's grantors, from 1827 to 1855, continuously and uninterruptedly occupied the land between the fence, as it ran from the Mceech Hole bridge to the Governor Robinson bridge, and the river, claiming title thereto, and that the defendant had since claimed to the line of that fence, such possession of the defendant's grantors would enure to the defendant's benefit, and give him a title by adverse possession.

The court declined to charge the jury as requested in the particulars above stated, but did, among other things to which no exception was taken, charge the jury as follows, viz : That, though it would have been sufficient for the plaintiff, in his declaration, to have alleged that the acts of trespass, of which he thereby complained, were committed on his close in Bennington, without designating it by name, boundaries, or other descriptions, yet, having described the close in his declaration, the jury should be satisfied upon the evidence that these acts, or some of them, were committed in or upon the close so described, before returning a verdict in favor of the plaintiff, and that if the jury should be satisfied, from the evidence, that any of the acts of trespass so complained of were committed in or upon the close so described, and that the plaintiff had a good title to the land included within the close so described, and a right to the possession of it as against the defendant, at the time when such acts were committed, they should, in respect to such act or acts, return a verdict in favor of the plaintiff; that the close described in the declaration was to be treated as a single close, and that all of the acts of trespass so complained of by the plaintiff, which were proved to have been committed by the defendant in and upon that close, should be taken into consideration by the jury, if they were satisfied, upon the evidence, that the plaintiff had a good title to the land included within the close so described, and a right to the possession of it as against the defendant, at the time when such act or acts was or were committed ; that the breaking and entry by the defendant into the close so described was the substantive and essential ground of the action, and that, so far as such breaking and entry was effected by the act or means of breaking down a fence belonging to the close, the damages thereby done to the fence might properly be taken into consideration as a part of the damages occasioned by such breaking and entry ; that, as to the damages done by cattle, if the jury found that the cattle by whom the injury was done were owned by the defendant, or in his keeping, so that it would be his duty to restrain them from going upon the plaintiff's close described in the declaration, and he, the defendant; permitted them to go upon that close, or if he actually drove them upon that

close, as the plaintiff's evidence tended to prove, in either case the plaintiff was entitled to recover in this action for the damages done by the cattle in eating up and destroying the grass thereon; that, as to the cutting of the said elm tree, the plaintiff and his grantors having been in the actual possession of the greater part of the Governor Robinson farm, under deeds conveying the same by definite boundaries, in respect to which there was no controversy, such possession should be taken as constructively extending to the limit of those boundaries if there was no actual adverse possession of any land within the same, and as constructively extending over all the land within those boundaries not included within the limits of any actual adverse possession, but that, if there was any such actual adverse possession of any land, within those boundaries, no constructive possession could, to that extent, prevail against it; and that as the defendant insisted that the bounds given in the deeds which conveyed the title under which he claimed were " on the highway " south of this elm tree, if there was any ambiguity or doubt arising from the description in the deeds, in respect to the location of the highway called for and intended to be referred to, it was to be settled upon the evidence as to what highway was meant and referred to in such description, taking into consideration all the evidence bearing upon the subject; and that, as the defendant had himself acquired no title or right to " the strip " by adverse possession at the time when this tree was cut, he could not connect himself with, or avail himself of, any possession or occupancy by any one of his grantors of the land included in the strip previous to the date of his said deed from the said Thomas McDaniels, in aid of a claim to hold the said strip, or any part of it, by adverse possession, any further than the description in that deed of the land thereby conveyed covered and embraced land which was included in " the strip."

To the omission of the court to charge the jury as requested, and to so much of the charge to the jury as is above detailed, the defendant excepted.

The jury returned a verdict in favor of the plaintiff for four dollars and fifteen cents damages. The defendant thereupon filed a motion that judgment be arrested in this cause " because that the plaintiff's declaration is insufficient to have any judgment upon." No question of variance between the pleadings and the evidence in the case were made or suggested on the trial, or on the hearing on said motion. The court overruled the motion *pro forma*, and

rendered judgment on the verdict, and, at the time of rendering the judgment, further adjudged that the cause of action in this case arose from the wilful and malicious act of the defendant. To the decisions of the court in overruling the motion as aforesaid, and in rendering the said judgment, and adjudging that the cause of action arose from the wilful and malicious act of the defendant, the defendant excepted.

The *locus in quo* was described in the declaration as being " situated and being in the town of Bennington, and being a portion of what is known as the Governor Robinson farm, and located on the south side of the Roaring Branch, and near what is called the Governor Robinson bridge."

—— —— for the defendant.

*A. P. Lyman* and *Wm. S. Southworth*, for the plaintiff.

Heard at the February term, 1868, decided at the February term, 1869.

The opinion of the court was delivered by

PIERPOINT, C. J.   The defendant insists that the county court erred in excluding the evidence offered by him, of what passed between the defendant and the plaintiff at an interview that took place a short time after the cutting of the elm tree by the defendant, which is one of the acts complained of.   We think this evidence was properly excluded.   It was not admissible as tending to rebut malice.   Whether the act was malicious, or not, was for the court to determine on an application for a certificate under the statute.   Again, the declaration of the defendant, made after the trespass was committed, would not be admissible to show the motive of his acts, even though the declaration was made to the plaintiff.   It was not admissible as tending to show an acknowledgment by the plaintiff that the defendant was in the adverse possession of the land where the elm tree stood.   Conceding that the plaintiff on that occasion said all that the defendant offered to prove, it has no tendency to prove such an admission.   The defendant then claimed that he was in adverse possession but the plaintiff did not assent to such claim, and what he did say shows

that he did not strictly acquiesce therein. It was not admissible as a part of the *res gestæ.* It occurred too long after the act complained of to come under that head.

The plaintiff's first request to charge the jury was substantially complied with. Whether the Slocum piece was embraced within the description of the *locus in quo,* in the plaintiff's declaration, was in dispute between the parties and was to be determined upon all the evidence bearing upon the point by the jury; it was not a simple question of construction. The court submitted the question distinctly to the jury, and told them that the plaintiff could not recover for any trespass proved that was not committed upon the premises described in the declaration. Under the charge no verdict could have been rendered for any trespass committed upon the Slocum piece, unless the jury found that the premises described in the declaration embraced that piece.

As to the second request, the court charged the jury that the breaking and entry by the defendant into the close so described was the substantive ground of the action, and that so far as such breaking and entry was effected by the act or means of breaking down a fence belonging to the close, the damage occasioned thereby might properly be taken into consideration as a part of the damages to be recovered for. We think the defendant cannot complain of the charge. The plaintiff, in actions of this kind, can recover for the natural and necessary consequences of the act charged. *Hutchinson* v. *Granger,* 13 Vt., 386. In this case the plaintiff was allowed damages only for the *very act* of breaking the plaintiff's close.

No objection is made in this court to the charge in answer to the third request.

The fourth request was properly denied. The question here is not whether this request contains a correct legal proposition, but whether the defendant was, upon the verdict in the case, entitled to such a charge.

The exceptions show affirmatively that there was no evidence tending to show that any of the grantors, in the chain of title under which the defendant's farm was held, ever claimed any right or title to the said strip of land between the old highway and the

river. This being so, there was no evidence to warrant such request, or a charge in acccordance with it.

No question is raised here upon the motion in arrest, hence we have no occasion to consider it..

The judgment of the county court is affirmed.