## GEORGE W. WEEKS v. TOWN OF LYNDON.

*Highway. Evidence. Bridge. Mistrial. Juror, Disqualification of.*

1. In an action to recover for injuries received while traveling on one of the approaches to a bridge, evidence was inadmissible to show that the main stringers of the bridge were thirty feet long. Fast driving is prohibited on the *bridge*, not on an approach to it.
2. The court properly struck out that part of a deposition where the witness stated that he regarded the bridge as reasonably safe.
3. Evidence was, also, inadmissible to show special cases in which other men afflicted with hernia as badly as the plaintiff claimed to be, had been able to do work ordinarily done by men in his condition of life.
. Also, inadmissible to show special instances in which men as old as the plaintiff, afflicted with hernia like his, had cured themselves.
5. When evidence is admissible for one purpose, and, inadmissible for another purpose, the exceptions, being silent as to what it was offered for, do not present such error that the court can reverse the judgment.
6. The notice was that the horse was "injured and damaged" ; *held* sufficient.
7. The conversation between one of the defendant's selectmen and a certain person was not admissible to show why it did not produce such person in court as a witness.

8. The court was not bound to give instructions upon questions of law not raised by the testimony.
9. The testimony was closed and one argument made for the plaintiff on Saturday. The cause was continued till Monday, and then till the afternoon of the next Thursday, on account of the sickness of one of the jurors. Two of the jurors in the interval were drawn and served in the trial of another case. An important question in both cases was, "Whether the plaintiff could so manipulate hernia as to aggravate it, and deceive the attending physician"? On Thursday the trial proceeded against the protest of the defendant. *Held*, a mistrial.
10. R. L. s. 3139, bridges—construed.

ACTION, to recover for injuries alleged to have been received while traveling over a bridge. Trial by jury, December Term, 1880, Caledonia County, Ross, J., presiding. Verdict for the plaintiff.

The plaintiff gave evidence tending to show that on the evening in question between nine and ten o'clock when it was very dark, he was traveling over this highway, known as School street, in the village of Lyndon, in a wagon drawn by one horse. While passing over the bridge in question at a fair trot (from six to eight miles an hour) his horse broke through the planking and fell. He was thrown out over the dasher, striking partly on the horse and partly on the thill and fell to the ground, receiving injuries which his evidence tended to show occasioned a double inguinal hernia.

Before the bridge is reached at the east end the highway descends. The bridge rises gradually from the ground at the east end to the support, proceeds on a level for the principal part of its length, and declines from the west support to the ground in the same way that it rises at the east end, except that the descent at the west end is some steeper. The plaintiff was passing over the bridge from east to west, and the accident happened on the decline at the west end, and on from third to fifth plank from west end.

The defendant offered evidence to show that the main stringers of the bridge were thirty feet long, though it did not claim that the accident happened on that portion of the bridge. The accident having happened on the bridge, the defendant claimed that if the plaintiff had been driving in a lawful manner upon that portion of the bridge between the supports the accident would not have occurred; and that the plaintiff's driving faster than a

walk on any part of the bridge was negligence *per se.* The court refused to admit the evidence, to which the defendant excepted. The evidence showed there was a trestle at each end of the long stringer, and that from the west trestle there was a space planked over of about ten feet before reaching the earth, with a space underneath left for the overflow of the stream in high water. The accident happened on this portion of the bridge as above stated.

The court struck out the following from a deposition :

"Int. 4. Whether or not up to the time of the accident you regarded the bridge as reasonably safe for the kind and amount of travel usually passing over it ? Ans. I should say that it was."

The exceptions stated as to Mrs. Johnson's testimony :

"Mrs. Johnson, a witness called by the plaintiff, was allowed to testify, against the objection of the defendant, that she had heard soon after the accident that the plaintiff had a hernia, that she learned this from his mother, and that she had never heard before the accident that he had a hernia. To the admission of this evidence the defendant excepted. The evidence on both sides agreed he had a double hernia the next day but one following the accident, but defendant's evidence tended to show the one on the left side was an old one. The witness was allowed to give the above in answer to the question when she first heard or knew he was afflicted with a hernia."

The defendant introduced one Hopkins as a witness, who testified that at one time prior to the accident, in company with one Grout, he was at the plaintiff's house ; that Grout asked the plaintiff to wrestle with the witness, and that the plaintiff refused, using language which witness could not repeat, that gave witness to understand that the reason for the refusal was that he had a breach. The defendant did not produce Grout as a witness.

The plaintiff introduced H. Chase, one of the selectmen of the defendant town and one of the managers of the suit, as a witness, who testified that he saw Grout after Hopkins testified, had a conversation with him, and that Whipple, the town agent, was present. The defendant then offered to show what the conversation was between Chase and Grout for the sole purpose of explaining why the managers for the defendant had not called Grout as a witness. The court refused to admit the evidence, to which the

defendant excepted. The counsel for the plaintiff in the argument to the jury were allowed to claim that the failure of the defendant to call Grout, being unexplained, should be taken against it so far as tending to show Grout would not have supported Hopkins' testimony.

The defendant requested the court to charge the jury as follows:

" That a bridge is in ' good and sufficient repair,' within the meaning of the statute, when it is in a condition to answer all the uses for which it was designed, and all the purposes that the traveling public have a legal right to use it for or require of it. The bridge in question having string-pieces of over thirty feet in length between the supports on which they rest, it was unlawful for the plaintiff to drive upon a trot (as he testifies he did) across said bridge, and the town was under no legal obligation to provide a bridge for such use. The plaintiff did it at his own risk and peril, and if he suffered injury thereby he cannot recover.

" That the very fact of plaintiff's illegal driving on said bridge is evidence to be weighed by the jury in determining the question of contributory negligence. For if plaintiff had walked his horse across said bridge the presumption is, he would not have been injured nor his horse have fallen down. If want of care and prudence on the part of the plaintiff contributed in the least degree in point of fact to the happening of the accident, the plaintiff cannot recover though the bridge was out of repair, for the reason that the court and jury cannot be called on to determine the proportionate effect of the concurring fault of both parties. Exercise of ordinary care is not to be presumed, but must be proved as an affirmative fact, and the burden of proof is on the plaintiff."

The court refused to charge as thus requested, but did charge on these points as follows:

" And the next question is, did the accident happen without any fault or want of care on his part contributing to it?

" Because if there was any fault of his, or any want of care that contributed to the happening of this accident, or any neglect of his, then the law will not attempt to parcel out how much injury arose from the defective highway, and how much from his negligence, but he will have to bear it all himself. The plaintiff was bound to use that highway just as any prudent man would, under all the circumstances, knowing all that he did about it, both as to the rate of speed at which he was going over it, and the

41

darkness of the night and everything. You have learned from the plaintiff what he knew about this highway. You have learned from the evidence about what the grade was, and all about it.

" The plaintiff says that he was driving his horse upon a fair trot. Was that imprudent ? Was that driving at the rate of speed a prudent man would drive knowing all about the circumstances, having a right to suppose and believe that the town had done its duty and maintained its bridge just according to its duty, so that it was safe for a prudent man to pass over as a prudent man should ? ·Was he acting as a prudent man would under the same circumstances " ?

.　.　.　·　.　.　.　.　.　.　.　.

" You are to be satisfied by all the testimony in the case, that this accident·happened through this insufficiency of the highway without any want of care or any negligence of his contributing thereto, he conducting himself as a prudent man would and should under the circumstances."

The testimony in the cause was closed in the afternoon of Saturday, December 11th, and one argument made for the plaintiff, at the close of which the court took a recess till Monday morning. Willard Bundy, one of the jurors in the cause, on account of sickness was unable to be present at the opening of court on Monday morning. The court asked the counsel of both parties if they were willing to proceed with the eleven other jurors. The defendant declined to do so. The court thereupon stopped proceedings in the case, and impanneled a jury in the case of *Randall* v. *Randall.* A. C. Ritchie and Sylvanus Owen, who were two of the jurors in the case of *Weeks* v. *Lyndon*, were called and served upon the jury in *Randall* v. *Randall.* That case proceeded regularly to a verdict. The court then impanneled another jury in the case of *Burnham* v. *Jenness.* Edwin C. Curtis, Edson Weed, P. Cunningham and A. G. Bickford, who were jurors in *Weeks* v. *Lyndon*, were called and served upon the jury in the case of *Burnham* v. *Jenness*, and that case proceeded regularly to a verdict.

The point principally in dispute in the case of *Weeks* v. *Lyndon*, was as to the effect of a hernia upon the plaintiff's health, and much testimony was produced upon that point. In the case of *Randall* v. *Randall*, one of the principal questions involved was as to the effect which an assault made upon the plaintiff had upon an existing hernia of the plaintiff, and much evidence was produced upon that point. In both cases there was considerable evidence given as to whether the respective plaintiffs could so manipulate the hernia as to aggravate it and deceive the attend-

ing physician. One of the plaintiff's counsel in *Weeks* v. *Lyndon*, was of counsel for the plaintiff in *Randall* v. *Randall*, and took an active part in the trial; and two of the plaintiff's counsel in the former case were of counsel for the defendant in the latter case, and one of them took an active part in the trial. The counsel for the defendant in *Weeks* v. *Lyndon*, were not of counsel for either party in *Randall* v. *Randall*. On the afternoon of Thursday following the court ordered the case of *Weeks* v. *Lyndon* to be resumed with the original panel of jurors, Willard Bundy being present, at the point where the case was left on the preceding Saturday, and that the defendant proceed with the argument. Thereupon the defendant filed with and delivered to the court a protest in writing against proceeding with the case, which protest was based on the above facts.

*George W. Cahoon* and *W. W. Grout*, for the defendant.

The evidence as to the bridge was admissible. R. L. s. 3139; 38 Vt. 668. Notwithstanding the accident did not happen over the main string pieces, still the case finds it was all one bridge, and the statute equally applies to the whole bridge. 15 Vt. 438; 18 N. J. 108. The court erred in striking out any part of the deposition. *Stanton* v. *Bridge Co.*, 47 Vt. 174, 7; 17 Vt. 502. Defendant's evidence was admissible to contradict witnesses produced by the plaintiff, who testified that a person of the age of the plaintiff afflicted as he was with hernia could not be cured. 38 Vt. 241; 48 Vt. 163; Ib. 532; 39 Vt. 250; 32 Vt. 591.

The evidence given by Mrs. Johnson and allowed by the court against the defendant's objection, it seems to us is the worst kind of hearsay evidence. It was no part of the *res gestæ*. *Holbrook et al.* v. *Murray et al.*, 20 Vt. 525; *Law* v. *Fairfield*, 46 Vt. 425; *Davis* v. *Fuller*, 12 Vt. 178; *Churchill* v. *Smith*, 16 Vt. 560.

The conversation between Grout and Chase should have been admitted. 71 Me. 21; 32 Me. 429; 45 Ga. 516; 46 Vt. 466; 45 Vt. 510; 47 Vt. 105; 41 Vt. 278. There was error in the charge of the court. 39 Vt. 253; 27 Vt. 465; 43 Vt. 450; 4 Vt. 229; Rob. Dig. p. 373. The notice was not sufficient as to the description of injuries to the horse. 51 Vt. 277.

It was error for the court to compel the defendant to proceed further with the trial against its protest and objection. 31 Ill. 515; 13 U. S. Dig. p. 233, s. 609; 2 Johns. Cas. 218; 1 Johns.

242 ; 9 Ark. 108 ; 10 Ill. 474 ; 8 Black. (Ind.) 282 ; 8 Ark. 119 ; 33 Ga. 372 ; 10 Ohio St. 598 ; 3 Mo. 28 ; 3 Black. (Ind.) 504. Too much care and precaution cannot be used to preserve the purity of jury trials. We cannot be too strict in guarding trials by jury from improper influence. 13 Mass. 217.

*Belden & Ide* and *H. C. Bates*, for the plaintiff.

The evidence as to the bridge should have been excluded. 38 Vt. 671. Dunklee merely gave his opinion, which clearly was not admissible. 47 Vt. 172 ; 45 Vt. 430 ; 33 Vt. 124. Defendant's evidence as to hernia and its effect, &c., was inadmissible. 39 Me. 287.

The defendant was allowed to show by the same kind of testimony as plaintiff's that it was curable, and in addition to this to show by medical witnesses and authors not only their general experience, but the results of special cases coming within that experience. It could go no farther. 9 Allen, 181 ; 110 Mass. 110 ; 20 Penn. ( 8 Harris) 130 ; 42 N. H. 97. Mrs. Johnson's evidence was admissible. 33 Ala. 611 ; 48 Vt. 666. It was wholly within the discretion of the court whether to proceed with the trial after the defendant's protest. 24 Pick. 67 ; 1 Gray, 555 ; 115 Mass. 587.

The opinion of the court was delivered by

TAFT, J.    I.    The accident happened while the plaintiff was driving faster than a walk upon one of the approaches to the bridge, and after he had crossed the bridge. The approach was composed of trestle work, and the defendant offered evidence to show that the main stringers of the bridge were thirty feet long ; the court refused to admit the evidence, and such refusal is assigned as error. The statute s. 3139, R. L., imposes a penalty upon any person driving a horse " faster than a walk, on a bridge with string pieces thirty feet long between the supports " ; and the defendant claims that the plaintiff being engaged in an illegal act at the time of the accident, is not entitled to recover ; that such an act was negligence *per se*. Without referring to the effect of such fast driving upon a bridge included in the statute,

we think the evidence was inadmissible. The offer was to show that the main stringers of the bridge were thirty feet long; not that they were of that length *between the supports ;* and unless such was the fact, the driving would not have been illegal. The offer did not bring the case within the statute. The place of the accident was not upon the bridge, but on an approach to it. The statute refers to fast driving upon the bridge itself, not on an approach or wharfing to it; and for this reason the evidence was properly excluded.

II. The portion of the deposition of Dunklee, objected to, was rightly excluded. It was the opinion of the witness as to the sufficiency of the bridge. The question has been too often decided to need discussion.

III. The testimony offered by the defendant to show special cases in which men afflicted with hernia as badly as the plaintiff claimed to be, had been able to do work, ordinarily done by men in the plaintiff's condition of life, was properly excluded. This was evidence of a collateral fact, and therefore inadmissible.

IV. The plaintiff produced witnesses who testified that a person of the age of the plaintiff afflicted as he was with hernia, could not be cured. The defendant afterwards offered evidence to show special instances in which men as old as the plaintiff, afflicted with hernia like his, had cured themselves. The court rejected the evidence : Was this error ? Evidence offered in a cause must be confined to the point in issue. This rule excludes all evidence of collateral facts; and if the facts offered to be proven were such, then it is not contended that the evidence was admissible. But the defendant insists that the offer to show by other men that they had cured themselves was proper, as such evidence illustrated the condition of the plaintiff, and therefore was direct evidence bearing upon it, and cite the cases of *Kent* v. *Lincoln*, 32 Vt. 591, and *Walker et ux.* v. *Westfield*, 39 Vt. 250. The question in both of these cases was as to the sufficiency of a highway; and evidence was admitted to show the

effect upon other wagons than the plaintiff's when passing over the place in question. The court say that the effect upon any carriage would be proper to be considered by the jury in passing upon the question of the condition of the road. The question was what was the state and condition of the road, and in the latter case as connected with that question, whether there was a hole in the road that a wagon wheel could drop into. Testimony that other wagon wheels went into it, was admitted for the purpose of showing its existence. We hardly think that it will be claimed that the effect upon wagons passing over other places than the one in controversy, would be legitimate; and it would be necessary that the cases should go to that extent to be authority for the admission of the testimony excluded. It was liable to all the objections urged against the admission of evidence of collateral facts; and notwithstanding the specious form of the offer, it would have been necessary to have determined the various questions of, whether the instances of men were as old as the plaintiff, the hernia like his, whether it was hernia at all, and if so whether the parties cured themselves. The result would be that a trial would become too protracted, and too many issues created, for the adverse party to meet. We find no error in excluding the evidence. The medical testimony of the defendant in answer to like testimony of the plaintiff was not excluded; and we think that upon the question at issue this was all that the defendant was entitled to.

V. We cannot say from the exceptions that the testimony of Mrs. Johnson was inadmissible. The witness was being examined as to the time when she first knew, or had heard, that the plaintiff was afflicted with a hernia. This presupposes that she had already testified that she did know, or had heard of it, and her answers as to the time when she first had knowledge in regard to it, and from whom she obtained it, may have been proper under certain circumstances. For the purpose of showing the existence of the hernia, what his mother told her, was but hearsay and inadmissible. But such testimony is often admitted for the purpose of identifying an occasion or date. *Hill* v. *North*, 34 Vt. 604. It does not appear but that it was admitted for the latter, or other

legitimate purpose, and in order to obtain a reversal of the judgment, error must affirmatively be shown. *Green* v. *Donaldson,* 16 Vt. 162.

VI. The defendant objected to evidence of damages to the plaintiff's horse, insisting that the notice was insufficient in that respect. The notice was that the horse was " injured and damaged." *Pratt* v. *Sherburne,* 53 Vt. 370, is decisive of that question. There was no error in admitting the evidence.

VII. , The refusal of the court to allow the defendant to show the conversation between Chase and Grout, for the purpose of explaining why the defendant did not call Grout as a witness, we do not think was error. While it may have been legitimate for the defendant to show that it could not call him, or perhaps (when in their power to do so) the reason why it did not, the offer to show what the conversation was was properly rejected. It was hearsay, and rightly excluded.

VIII. The exceptions do not show that there was any evidence in the case upon which the defendant was entitled to instructions upon its requests. They relate to the effect of the plaintiff's illegal driving, and the insufficiency of the road from latent defects. There is no statement of the evidence in the case, or, what it tended to show, and the only reference to the stenographer's notes is to the offer of the evidence that the stringers were more than thirty feet long ; this fact alone would not render the driving unlawful. Although the requests may have contained correct statements of law, the court were not bound to answer them, as it does not appear that they were warranted by the evidence ; and the court were not bound to give instructions upon abstract points not raised by the testimony. *Wetherby* v. *Foster,* 5 Vt. 136 ; *Clark* v. *Boardman,* 42 Vt. 667.

IX. We think the court committed error in proceeding with the trial after the defendant's protest. During the recess taken upon the trial, on account of the sickness of one of the jurors,

two of the panel were drawn and served in the trial of *Randall* v. *Randall*. An important question in both cases was "Whether the plaintiff could so manipulate hernia as to aggravate it, and deceive the attending physician." In rendering a verdict, therefore, in the Randall case, Ritchie and Owen, the two jurors who served in both cases, must necessarily have formed and expressed an opinion upon that question, a fact which would have disqualified them at the beginning of the trial in the case at bar. A juror is incompetent who has " declared his opinion on either side." Tidd Pr. (9 Eng.) Ed. 853. A majority of the court think the result was a mistrial.

Judgment reversed and cause remanded.