## Chicago & Northwestern Railway Company
### v.
### Cornelius Hart.

*Railroads—Action for Damages for killing Colt—* Res Adjudicata—*Evidence—Instructions—Contributory Negligence—Attorney Fees— Estoppel.*

1. A fact which illustrates by experiment the condition of the subject-matter of the issue involved is admissible as direct evidence bearing upon said issue.

2. In an action against a railroad company to recover damages for a colt killed by one of defendant's trains, it is *held:* That certain evidence of the previous conduct of domestic animals in regard to a certain cattle guard, which tended to prove a defective construction of the wing fence on one side thereof, was properly admitted; that the matter of said fence was not involved in the former appeal to this court; that the verdict of the jury is sustained by the evidence; that the plaintiff does not appear to have been guilty of contributory negligence; that there was no error in the rulings of the court below upon instructions; and that the plaintiff was entitled to claim attorney fees although he introduced no evidence on that point at the former trials.

[Opinion filed January 10, 1887.]

APPEAL from the Circuit Court of Winnebago County; the Hon. J. V. EUSTACE, Judge, presiding.

Mr. N. C. WARNER, for appellant.

The principle of *res judicata* embraces not only what was actually determined in a former case, but also extends to any other matter properly involved and which might have been raised and determined in it. Rogers v. Higgins, 57 Ill. 244; Bailey v. Bailey, 115 Ill. 551.

The cross-error assignment raised a question affecting the merits, and it must have been considered and decided in the former appeal, and the cause being reversed upon errors assigned, and the opinion being silent upon the point raised by the cross-error by implication, was against the point made by the assignment of cross-error. Keiser v. Cox, 16 Ill. App. 631.

" Whether the fence was sufficient to prevent cattle, horses, sheep and hogs from getting onto the railroad, was properly determined by an examination of the fence itself, and not by the previous conduct of animals which had been pastured on the ground which it in part enclosed." C. & A. Ry. Co. v. Umphenour, 69 Ill. 198.

Mr. J. C. GARVER, for appellee.

BAKER, P. J.   This suit was commenced before a Justice of the Peace, and taken by appeal to the Circuit Court; and a former judgment herein was reversed in this court. 13 Ill. App. 186.

The object of the litigation was to recover the value of two colts belonging to appellee claimed to have strayed upon the right of way and railroad track of appellant through a defective cattle guard, and to have been killed by its locomotive and cars.

The younger of the colts may be considered as now eliminated from the case, as the jury very properly found that it was killed at a public highway crossing and the railway company not liable therefor.   The judgment here in question was for the older and more valuable of the colts, $80, and for attorney fees at the last trial, $35.

Was the cattle guard on the west side of the public road such as the statute requires?   Was it suitable and sufficient to prevent ordinary cattle, horses and other stock from getting on the railroad track within the inclosed right of way ?   The cattle guard in question was on level ground, was constructed in 1878 or 1879, and the guard and fences leading up to the end of it, had not been changed since it was first built.   The wing fence on the north end flared back from the pit of the cattle guard, the part of the fence being some three feet from the edge of the pit and the lower board of the fence coming up to such edge, the end of the next board being back from the edge five or six inches, the board above that back five or six inches more, and so on up to the upper board, which came no further than the post; in other words, the ends of the boards slanted up and back from the edge of the pit to the top of the fence post.   The fault of the cattle guard, if any, was that on account of the slope of the wing fence, and the shortness of the pit from north to south. when considered in connection with the top of the wing fence at the post, ordinary horses and cattle could readily step over this fence upon the right of way of the company.

It was a matter of contention at the trial, whether from such construction of the cattle guard and its wings, domestic ani-

mals could so do. The court, over the objections of appellant, permitted appellee to prove by a witness who lived in the neighborhood, the previous conduct of such animals with reference to that cattle guard, and that he had repeatedly seen cows, heifers, steers and horses pass over the fence by making one step and going right in, and had seen a boy ride a horse across the fence. Great complaint is made of the admission of this testimony; it is claimed that the matter is *res judicata* in respect to this litigation, and also that the testimony itself is clearly collateral and incompetent.

This evidence was not in the record when the case was in this court before; it having been ruled out by the court below.

It may be true that such action of the court was then assigned as cross-error, but, if so, this court failed to pass upon it and the matter has never been here considered until now.

We think the ruling of the court upon this last trial was right, and that this evidence was admissible and not subject to the objection that it introduced collateral issues. A fact that illustrates, by experiment, the condition of the subject-matter of the issue in controversy is not collateral to that issue, but is direct evidence bearing upon it. Kent v. Lincoln, 32 Vt. 591; Walker v. Westfield, 39 Vt. 246; City of Aurora v. Brown, 12 Ill. App. 122. In City of Chicago v. Powers, 42 Ill. 169, evidence of this character was held proper, but its competency was, in its opinion, placed only upon the ground of affording proof of notice of defects. Wallace v. Wren, 32 Ill. 146, was for a breach of warranty of soundness in the sale of a horse, and it was decided that the circumstance that a mule which had worked with the horse in issue got the glanders and died therefrom, was competent testimony to prove such horse had the glanders.

Proof of the previous conduct of domestic animals in regard to that cattle guard being admitted, it would seem the jury had ample evidence from which to find the cattle guard was entirely inadequate in its construction, and not a substantial compliance with the requirements of the law.

Did the older and larger of the two colts pass over this defective cattle guard and wing fence, and of its own accord?

C. & N. W. Ry. Co. v. Hart.

and, was it within the inclosed right of way when struck and killed? The jury, by their verdict, answered both of these questions in the affirmative, and with their answers we have no fault to find.

The evidence excluded the idea that the colt could reasonably be presumed to have got on the right of way of its own accord, otherwise than by stepping over the wing fence. The claim it was caught on the public highway in the pilot of the engine attached to the fast passenger train going west at eight o'clock, P. M., and carried west of the cattle guard and there thrown off, is not supported by the testimony. As late as after six o'clock in the evening the two colts were in the inclosed pasture of appellee, a mile and a half from the highway crossing, and were then fed by him; and it is not probable they got out before the expiration of some length of time after their feed was given them. The engineer and fireman of the train in question both testified that they had no knowledge of their engine coming in contact with any live stock or animals at that highway crossing on that evening. It is also highly improbable the colt could have been so struck, carried on the pilot, and then thrown off without being seriously injured and disabled. Nor is there any evidence tending to prove the colt jumped the guard through the impulse of fright caused by said passenger train; and the engineer and fireman also stated in their testimony that they had no recollection of seeing any animals on or near the track on that run. That the larger colt was on the right of way west of the public road when struck and killed was abundantly shown. Mack, brakeman on the 10:25 train going east, testified he saw two colts, the larger one being west of the west cattle guard, and the other on the highway; that the former crossed over the railroad track from left to right, in front of the engine, and that he could not swear whether it came in contact with the locomotive or not. The presence of the colt on the west side of the right of way was further indicated by the presence there of fresh horse manure and blood on the track, and of two places in the grass where a horse had evidently been lying down. The blood that was found is easily and reasonably accounted for

upon the hypothesis it was slightly hurt by the 10:25 freight train, as intimated by the brakeman.

It is conceded on all sides that both colts were struck and killed by the 2 A. M. passenger train going east. The engineer on that train thought both were on the road crossing, but would not swear positively to that effect. He stated, however, that one was lying down and the other standing up. The fireman placed the colt that was standing up, on the highway crossing; and the one that was lying down, he placed west of the crossing and from four to six feet from the west cattle guard.

We see no sufficient ground for saying appellee was guilty of contributory negligence. The colts were kept by him in a pasture surrounded in part by a barbed wire fence, and in part by a fence four boards high which was in pretty good condition, and which appeared to be all right that evening. The next morning a board was found to be off in one place.

The objections made to the instruction given at the instance of appellee are not tenable, as applied to the facts of this case; it merely stated the statutory requirement and liability with reference to cattle guards.

The instructions numbered 8, 9, 10, 11 and 12, asked by appellant, were properly refused; some of them usurped the province of the jury, and virtually took the case away from them. Some of them were argumentative, and laid undue stress upon inconclusive circumstances; and still others were in direct conflict with the views of the law expressed in this opinion. The seven instructions that were given on behalf of appellant fully informed the jury as to the law of the case. Appellee was not precluded from claiming attorney fees on the last trial from the fact that on the former trials he introduced no evidence of the value of such services. The evidence in the record was confined to the pending trial. The statute of May 29, 1879, expressly provides for the recovery, in such case as this, of "reasonable attorney's fees in any court wherein suit is brought, or to which the same may be appealed." The suit was appealed to the Circuit Court by appellant, and was being tried there for a second time at its own instance.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*