## THE CITY OF AURORA

### *v.*

## JOSEPH HILLMAN.

1. MUNICIPAL CORPORATION—*when chargeable with notice of defects in sidewalk.* Where a party is injured from a defective sidewalk, caused by the stringers upon which the boards rested being decayed, so as not to hold nails, so that a loose board tipped when stepped upon by a companion walking with the person injured, and the proof showed that the stringers had been in this condition a long time before the accident, though it failed to show affirmatively the city knew of the particular board being loose at the time, it was *held*, that the city was chargeable with notice of the unsafe condition of the walk, and was guilty of negligence in not having it repaired.

2. NEGLIGENCE—*contributory in passing over defective sidewalk.* A party injured by a fall from a defective sidewalk in a city, can not be held guilty of negligence in not leaving the sidewalk and traveling along the driveway of the street, nor will the mere fact that he might have taken a better and safer sidewalk than the one he did, the latter being on his direct way home, charge him with the want of ordinary care, when he is not aware of such walk being dangerous or unsafe, nor will the fact of his drinking a glass of beer, or his going home with a fellow-workman who, four or five hours before and prior to his afternoon's work, had drunk three or four glasses of ale, in and of itself be any evidence of a want of reasonable care on the part of the one injured.

3. In a suit against a city to recover damages sustained by a fall from defects in a sidewalk, caused by the tipping of a loose board by the plaintiff's companion, walking with him, the fact of their being intoxicated is a material one, as tending to show want of ordinary care on the part of the plaintiff.

4. SAME—*comparative and contributory.* It is not a matter of law that under any and all circumstances a plaintiff, who happens to be passing along a sidewalk with a third person, who is intoxicated, and such intoxication of the third person contributes in any degree to the injury of the plaintiff from a defective sidewalk, is precluded from recovery against the city for neglect to keep the walk in repair.

5. PRACTICE—*no error to refuse same question a second time.* Where a witness has already testified that he could not swear as to certain persons being intoxicated at the time of an injury to one, there is no error in refusing to allow the same question to be substantially repeated to the witness.

6. EVIDENCE—*opinion of witness as to intoxication.* Where a witness states he has no knowledge whether or not a person was intoxicated at a particular time, there is no error in refusing a question asking him to give his opinion as to his intoxication, which is not confined to the personal appearance or conduct of the party.

7. SAME—*proof of intoxication.* A witness may state, from his observation and the exercise of his perceptive faculties, whether a person was or was not intoxicated, without being confined to the detail of the combination of minute appearances from which he learned the fact, and he may also state whether or not a person had the appearance of being intoxicated, and such statement is a statement of a fact.

8. DAMAGES—*instruction to assess, when proper.* In an action for a personal injury, there is no error to instruct the jury, in case they find, from the evidence, certain facts authorizing a recovery, and that the plaintiff has sustained injury thereby, to assess his damages, as the law gives him a right to at least nominal damages in such event.

9. SAME—*whether excessive.* A recovery of $768.75 damages by a plaintiff against a city for a severe personal injury from a defective sidewalk, where the plaintiff was unable to return to his work for about five months, and upon his return to the shop was not able to earn more than one-third of his former wages of $12 to $14 per week, and at the time of the trial, more than two years after the accident, he was not yet well, and it was doubtful if he ever would recover the full use of the ankle joint, and the proof showed that the pain and suffering following were very severe and long continued, and that he had incurred some expenses in consequence of the injury, was held not to be excessive.

10. INSTRUCTION—*singling out particular facts.* An instruction is properly refused which singles out a portion of the evidence on a given subject, as, of notice to a city of defects in a sidewalk, and informs the jury that from these notice can not be presumed. The jury should be left to draw their conclusion from all the evidence on the question.

APPEAL from the Circuit Court of Kane county; the Hon. HIRAM H. CODY, Judge, presiding.

Mr. A. E. SEARLES, for the appellant.

Mr. A. J. HOPKINS, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This was an action on the case, prosecuted by appellee against the City of Aurora, in the Kane circuit court, to recover damages for injuries occasioned by a fall on a sidewalk on South River street, in said city. At the October term, 1876, of the court, a trial was had before a jury, which found a verdict in favor of appellee, and assessed his damages at $768.75. A judgment was entered on this verdict, from which the city appealed.

About six o'clock on the evening of August 31, 1874, appellee and one Moreau quit their work, on River street, and started to return to their homes, on Railroad street. They were walking side by side on the sidewalk in question, when Moreau put his foot on a loose plank in the walk, and it tipped up, and appellee's foot went into the hole, which was about seven inches deep, and he fell and sustained severe injuries.

While it is true the evidence failed to affirmatively show this particular plank had been loose for any considerable length of time, yet it does show, beyond any controversy, it was either loose on that evening or in such a condition that it was loosened by being stepped on by Moreau. It further shows the sidewalk was laid on two stringers or bearings, which stringers were rotten, so much so that they would not hold nails or spikes, and that this was their condition at the particular place where the accident happened. The planks on the walk projected over these rotten bearings some three or four inches, so that if two persons were walking together on the walk, and one stepped a little quicker than

64      City of Aurora *v.* Hillman.      [Sept. T.

Opinion of the Court.

the other, and placed his foot near the end of a plank, it would throw up the opposite end of the plank and trip his companion as he moved his foot forward. Several witnesses testify the plank was loose at the spot where appellee was hurt, and they were not contradicted. The assumption that the only defect in the sidewalk at the place of the injury was that this one plank was loose, is not justified by the testimony. The primal defect, and that which caused the boards to become loose, was, that the stringers were decayed and would not hold nails, and this had been their condition for a long time. Many of the witnesses say that the walk had been bad for years. After the lapse of so considerable a time, notice of the defective state of the sidewalk will be presumed. The street commissioner, who had control of this and other sidewalks, swears he knew it was bad, and, moreover, the evidence shows the city council was expressly notified of its condition. The city authorities, then, not only had presumptive but actual notice of the defects in this walk, and had ample time to have it repaired, but failed to do so, and were guilty of negligence.

It is also claimed by appellant, that appellee was guilty of a degree of contributory negligence which will prevent his recovering. The sidewalk was intended for foot passengers, and the carriage-way in the street was intended for horses and vehicles. It is true, pedestrians would have a right to cross over the street or road, and their right to do so, at least at the usual street crossings, would be equal to that of persons with teams to drive along the street, and cities are bound to keep such crossings in a safe condition; but we are not prepared to hold, a pedestrian has an equal right with one who drives a carriage to travel in and along the driveway of a public street, or that a city is under any obligation to keep such driveway, longitudinally, in a fit and safe condition for pedestrians. We assuredly can not hold appellee was guilty of negligence in not taking the middle of the street. Had he done so, a driver would have been liable if he had wilfully or negligently driven over him, but a relatively higher degree

of care would have been required of the pedestrian, and, so far as the city is concerned, it would have assumed but little, if any, responsibility for his safety.

Nor does the *mere* fact the plaintiff might have taken a better and safer sidewalk than the one he did take, charge him with want of ordinary care. He traveled the usual and most direct route to and from his work. In *Lovenguth* v. *City of Bloomington*, 71 Ill. 238, the plaintiff not only knew the sidewalk was in an unsafe condition, but there was another sidewalk to his boarding place which was entirely safe and secure, and the distance was no greater, and then he attempted to get over a place where some planks were gone and others were loose, with a skip or jump. The court said in that case : "Upon the evidence submitted, it was a question for the jury to determine whether the accident occurred from the negligence and want of proper care on the part of plaintiff, or from the neglect of the city to keep in repair a sidewalk."

The point made, that appellee and Moreau, or at least Moreau, were or was intoxicated, is not warranted by the evidence. The fact appellee had that evening gone to a public house near where he worked and got his dinner bucket filled with ale for his sick wife, who was drinking that beverage by order of her physician, as a stimulant, and the further fact that he himself drank one glass of beer while there, will hardly justify the conclusion he was drunk; nor would the fact he went home from his work with a fellow-workman who, four or five hours before, and prior to his afternoon's labors, had drank three or four glasses of ale, be any proof, in and of itself, of a want of reasonable care on the part of appellee. The men themselves testify they were walking carefully, and there is nothing in the record to contradict them. Besides, the jury were the judges of the fact, and they found, by their verdict, appellee was exercising proper care, and that the injury received grew out of the negligence of the city in not keeping the sidewalk

in proper repair, and we would not disturb such finding unless it was clearly against the evidence.

On the trial, the court refused to permit one of the witnesses for the city to answer this question : " State whether or not, from what you saw, Hillman and Moreau, or either of them, was under the influence of liquor at that time?" The fact of these men being intoxicated was a material one, as showing, or tending to show, want of ordinary care on the part of the plaintiff. *Illinois Central Railroad Co.* v. *Cragin*, 71 Ill. 177 ; *City of Rock Island* v. *Vanlandschoot*, 78 id. 485. But it was not error to sustain the objection to the question, as the same witness had just answered he could not swear as to the condition of these men as to being intoxicated or not. The court was under no obligation to allow substantially the same question to be repeated time and again. Appellant was not injured by the action of the court, as the witness had already stated his inability to testify whether they were intoxicated or not, and a repetition of the answer would only have encumbered the record.

The court also refused to permit said witness to answer this question : " State whether or not, from what you saw at this time, Hillman and Moreau, or either of them, was, in your opinion, under the influence of liquor." Intoxication or drunkenness is a fact which may be proven as other facts are proven. A witness, by observation and by the exercise of his perceptive faculties, his five senses, can learn and know facts, and such facts he may state. He would not be confined to a detail of the combination of minute appearances that have enabled him to ascertain the fact of intoxication. The details of conduct, attitude, gesture, words, tones, and expression of eye and face may be stated by him, or he may state the fact of intoxication, a fact which he can ascertain by personal observation, as he ascertains other facts. So, also, a witness may state whether or not a person had the appearance of being intoxicated, and such statement of appearance would be the statement of a fact. Facts which are latent in themselves, and

only discoverable by way of appearances more or less symp-tomatic of the existence of the main fact, may, from their very nature, be shown by the opinions of witnesses as to the exis-tence of such appearances or symptoms.    Sanity, intoxication, the state of health or of the affections, are facts of this charac-tor.    1 Greenleaf Ev., sec. 440 a.

In this case the witness was asked to give his opinion from what he saw, after he had stated he had no knowledge as to the existence or non-existence of the fact, and such opinion was not confined to an opinion based upon the personal ap-pearance or conduct of the men.    In *Illinois Central Railroad Company* v. *Cragin, supra,* cited by appellant, it was the state-ment of the witness that Standwich " was under the influence of liquor," and not the opinion of the witness, that was held to be competent testimony; and to the same effect is the case of the *City of Rock Island* v. *Vanlandschoot, supra,* also cited. The question at bar called for a mere expression of opinion from what the witness saw, and his opinion, if stated, might have been one derived not from the personal appearance or conduct of the men, but merely from the fact, which is in proof, that he saw appellee down on the sidewalk with the liquor spilled from his pail.    There was no error in sustain-ing an objection to the question.

The sixth instruction given for appellee was as follows:

" 6.    Reasonable care means, in these instructions, that degree of care which may be reasonably expected from a person placed in plaintiff's situation at the time of the alleged injury."

The instruction says, in effect, that the degree of care and caution required would depend upon the circumstances sur-rounding the plaintiff at the time; if he knew that the sidewalk was defective, or if his companion was drunk, as suggested by counsel, then a higher degree of care would reasonably be expected from him.    There is no evidence even tending to show that he himself was under the influence of liquor.

The seventh instruction given for appellee reads as follows:

" 7.   If the jury believe, from the evidence, that the most direct route for the plaintiff in going to and from his home to his place of business, was over South River street in said city of Aurora, then the fact (if shown by the evidence) that the sidewalk on said street, over which plaintiff passed, was defective, and had been in a defective condition for some years previous to the alleged injury, would not oblige him to take another, less convenient, sidewalk."

This instruction states a correct rule of law.   Wharton on Negligence, sec. 997.   The only question involved in it is, as to his *right* to pass over that sidewalk; the degree of care required of him in the event he did pass over it, or the question as to whether it would or would not be ordinary care to persist in walking over it, is not involved in the instruction. In *City of Centralia* v. *Krouse,* 64 Ill. 20, the sidewalk was positively dangerous, and practically impassible, and Krouse had full knowledge of this, and it was culpable negligence in him to undertake to pass over it.   The sidewalk in this case was not of this character, and, although out of repair, had been passed over daily, not only by appellee, but by all other pedestrians who found it convenient so to do.   Nor does said instruction conflict with the eighth instruction given for appellant,—this latter instruction informing the jury as to what would be negligence and a want of ordinary care on the part of plaintiff.   The evidence does not show appellee, who was a shoemaker, knew the stringers were rotten and would not hold nails, and he testified on the trial he did not know the plank Moreau stepped on was loose, and that he had passed there that morning and it was not loose then.

It is urged, that the first, second, fourth and eighth instructions for appellee are erroneous, in that they instruct the jury, in the event they find certain facts, to "assess damages." It is true it is a question to be determined by the jury, whether a plaintiff has sustained damages, and if so, to determine how

much damages. Among the facts the jury must first find, before they can assess any damages, as they are told in each of these instructions, is the fact the plaintiff has sustained injury. The injury to the plaintiff is a condition precedent to the recovery of damages. If, however, the tort on the part of the defendant is established, and a consequent injury to the plaintiff, then the right to recover some damages, even if nothing more than nominal damages, follows as a matter of law. In the case of *Chicago and Northwestern Railway Company* v. *Chisholm,* 79 Ill. 584, the instruction was radically different from the instruction in this record; there, the jury were told if they found the defendant guilty of the trespass they should assess damages, without requiring them to first determine that the plaintiff had been injured or damaged, while, by the instructions now before us, the jury are required to first ascertain whether the plaintiff has been injured, and if they do so find, then to assess the damages.

The seventh instruction asked by appellant was properly refused. It singles out a portion of the evidence on the subject of notice, and tells the jury from that they can not presume the city had actual notice. It was for the jury to determine, from all the evidence bearing on the question, whether the city had notice of the condition of the sidewalk, and they should be left free to draw their own conclusions from all the testimony before them.

The eleventh instruction asked by appellant, was properly refused. The same doctrine, at least so far as appellee's alleged intoxication is concerned, was fully covered by the seventh instruction given. We think both of the instructions might properly have been refused on the ground there was no evidence tending to show appellee was intoxicated. Besides, the instruction took from the jury the question of comparative negligence; and, moreover, we are not prepared to hold that under any and all circumstances a plaintiff who happens to be passing along a sidewalk with a third person who

is intoxicated, and such intoxication of this third person contributes in any degree whatever to the injury, is prevented from recovering against the city.

The jury was fully and fairly instructed as to the law of the case, and appellant has no right to complain.

The damages assessed by the jury were not excessive. The injuries were received on the last day of August, 1874, and appellee was not able to return to his shop until the last week of the following February, and after his return he was not able to earn much more than one-third of the wages he made before his fall. When sound, he made from $12 to $14 per week. When he fell on the sidewalk he not only seriously sprained his ankle, but ruptured the ligaments. The pain and suffering were very considerable and long continued. Some expenses were incurred. At the time of the trial, more than two years after the time of the injury, his ankle was not yet well, and his physician stated the injury was more serious than an actual fracture, and he thought it doubtful whether he would ever recover the full use of the joint.

The judgment is affirmed.

*Judgment affirmed.*