OSBORNE *v.* CITY OF DETROIT.

(*Circuit Court, E. D. Michigan.* October 25, 1886.)

1. MUNICIPAL CORPORATION—LIABILITY FOR DEFECTIVE WAY—EVIDENCE—PREVIOUS ACCIDENT.
   In an action for injuries occasioned by a defective sidewalk, it is not error to permit a witness to testify that, about two months before the accident, he and his wife met with an accident at the same place.

2. SAME—EXPERIMENT BEFORE JURY—UNSWORN EXPERT.
   Where the plaintiff claimed to be paralyzed by the fall, it is not error to permit her medical attendant, who had not been sworn, to demonstrate her loss of feeling to the jury, by thrusting a pin into the side plaintiff claimed to be paralyzed.

3. SAME—CONDITION OF SIDEWALK NEAR BY.
   Evidence is properly admissible as to the condition of the sidewalk in the immediate neighborhood of the spot where the accident occurred, if it be so near the place of the accident that a person examining the walk there would be likely also to notice the defect where the accident occurred.

4. SAME—SUBSEQUENT REPAIR.
   It is also competent to show that the walk was repaired about a week after the accident, as tending to show that the walk was out of repair at the time of the accident.

**5. SAME—STATUTE LIMITING RECOVERY—RETROSPECTIVE OPERATION.**

A statute passed after the accident had taken place, limiting the amount of recovery in such cases, was held to be prospective only, and having no bearing upon the plaintiff's right to recover full damages. A statute should be held to operate prospectively only, unless its terms show clearly a legislative intent that it should have a retroactive effect.

**6. SAME—CITY PROPERTY OCCUPIED BY AGENTS OF STATE.**

The accident occurred upon a sidewalk in front of property belonging to the city, but in charge of the police commissioners, who were appointed by the governor of the state. *Held*, that it was the duty of the city to keep the sidewalk in repair, and that such duty was not lessened by the fact that the lot was occupied by agents of the state.

**7. SAME—CONTRIBUTORY NEGLIGENCE.**

The testimony showed that plaintiff walked along the street without paying attention to the sidewalk, and that it was notoriously rotten, so that any one could see the earth beneath the plank. *Held*, that the question of contributory negligence was for the jury.

**8. SAME—PROXIMITY TO POLICE STATION.**

There was no error in calling the attention of the jury to the fact that the accident occurred in front of the police station, and within sight of the officers whose duty it was to have charge of the station.

**9. SAME—DELAY IN CALLING PHYSICIAN.**

The fact that the plaintiff did not send for a physician until some time after the accident had occurred, was held proper evidence of contributory negligence to go to the jury, but not conclusive.

**10. SAME—AMOUNT OF RECOVERY.**

Where the plaintiff suffered a complete paralysis of the right side, *held*, that a verdict of $10,000 was not excessive.

*(Syllabus by the Court.)*

On Motion of Defendant for a New Trial.
*F. H. Caufield*, for plaintiff.    *H. M. Duffield*, for defendant.

BROWN, J.    The plaintiff in this case obtained a verdict of $10,000 for personal injuries received by her in falling upon a defective sidewalk upon the north side of Church street in this city, between Michigan and Trumbull avenues.    Defendant now moves for a new trial upon the following grounds:

1.  The admission of the testimony of Bateson in regard to the accident to himself and wife, and the precautions they took afterwards.    Bateson testified, in substance, to the defective condition of the walk at that place, and that about two months before the accident he and his wife met with a slight accident there, and that after that they always walked in single file.    We take it that similar accidents, occurring in the same neighborhood, may be shown as evidence, not only of the actual condition of the walk, but as tending to show notice to the city.    It is true that the Massachusetts cases hold that this evidence is not admissible, upon the ground that it raises a collateral issue which the defendant is not called upon to try, and he therefore may well claim to be surprised. The weight of authority, however, is decidedly the other way.    See *Delphi* v. *Lowery's Adm'x*, 74 Ind. 521, in which all the former cases are reviewed.    So far as the federal courts are concerned, the question has been put at rest by the case of *District of Columbia* v. *Armes*, 107 U. S. 519, 2 Sup. Ct. Rep. 840, which was also an action for damages received by a person from a fall caused by a defective sidewalk in the city

of Washington. Upon the trial, a policeman who saw the deceased fall on the sidewalk, and went to his assistance, after testifying to the accident, was allowed to state that he had seen persons stumble over there, and remembered sending home in a hack a man who had fallen there, and that he had seen as many as five persons fall there. See, also, *City of Chicago* v. *Powers*, 42 Ill. 169; *Railroad Co.* v. *Ruby*, 38 Ind. 294; *Quinlan* v. *Utica*, 74 N. Y. 603; *Dougan* v. *Transportation Co.*, 56 N. Y. 7; *Kent* v. *Town of Lincoln*, 32 Vt. 591; *Darling* v. *Westmoreland*, 52 N. H. 401; *Moore* v. *Burlington*, 49 Iowa, 136.

2. That the court erred in permitting the exhibition of the plaintiff and her condition to the jury by Dr. Gaylord. The doctor, who had not been sworn, exhibited the plaintiff to the jury, and thrust a pin into the right side of her face, her right arm and leg, and, from the witness' failing to wince, the jury were asked to infer that there was a complete paralysis of her right side. Objection was made to this upon the ground that the doctor was not sworn as to the instrument he was using, nor was the plaintiff sworn to behave naturally while she was being experimented upon. It is argued that both the doctor and plaintiff might have wholly deceived the court and jury without laying themselves open to a charge of perjury, and that plaintiff was not even asked to swear whether the instrument hurt her when it was used on the left side, or did not hurt her when used on the right side; in short, that there was no sworn testimony or evidence in the whole performance, and no practical way of detecting any trickery which might have been practiced. We know, however, of no oath which could be administered to the doctor or the witness touching this exhibition. So far as we are aware, the law recognizes no oaths to be administered upon the witness stand except the ordinary oath to tell the truth, or to interpret correctly from one language to another. The pin by which the experiment was performed was exhibited to the jury. There was nothing which tended to show trickery on the part of the doctor in failing to insert the pin as he was requested to do, nor was there any cross-examination attempted from the witness upon this point. Counsel were certainly at liberty to examine the pin and to ascertain whether in fact it was inserted in the flesh, and, having failed to exercise this privilege, it is now too late to raise the objection that the exhibition was incompetent. It is certainly competent for the plaintiff to appear before the jury, and, if she had lost an arm or a leg by reason of the accident, they could hardly fail to notice it. By parity of reasoning, it would seem that she was at liberty to exhibit her wounds if she chose to do so, as is frequently the case where an ankle has been sprained or broken, a wrist fractured, or any maiming has occurred. I know of no objection to her showing the extent of the paralysis which had supervened by reason of the accident, and evidence that her right side was insensible to pain certainly tended to show this paralyzed condition. In criminal cases it has been doubted whether the defendant could be compelled to make profert of his person, and thus, as it were, make evidence against himself. The authorities upon this subject are collated in 15 Cent. Law J. 2, and are not unequally di-

vided, but we know of no civil case where the injured person has not been permitted to exhibit his wounds to the jury.

In *Schroeder* v. *Railroad Co.*, 47 Iowa, 375, it was held not only that the plaintiff would be permitted, in actions for personal injuries, to exhibit his wounds or injuries to the jury, but that he might be required by the court, upon proper application therefor by the defendant, to submit his person to an examination for the purpose of ascertaining the extent of such injuries, and upon refusal might be treated as in contempt. See, also, *Mulhado* v. *Railroad Co.*, 30 N. Y. 370.

But, even considering the testimony to have been improper, as there was not the slightest evidence offered by the defendant tending to show that the plaintiff was not completely paralyzed, (and in fact this was substantially admitted upon argument to the jury,) the defendant could not have been prejudiced by the testimony. We are not authorized to infer that the sympathies of the jury were moved to a greater degree by this exhibition than by the uncontradicted testimony that the plaintiff had suffered a complete paralysis.

3. That the court improperly allowed the testimony of the witness Moore as to the condition of the sidewalk from the rear of the station to the intersection or junction of Michigan avenue and Church street. The lot in front of which the accident occurred was a triangular piece of ground belonging to the defendant, the west 50 feet of which was occupied by a police station, and the east 25 feet of which belonged to the same parcel of ground, but was not occupied. It was shown that the accident occurred about half the distance from the front to the rear of the building. The witness Moore was permitted to testify, not only as to the condition of the walk immediately adjoining the station-house, but also to the fact that the easterly end of the walk in front of the vacant portion of the lot was in a very bad condition, and that, as policeman, he had reported to Sullivan, the inspector of streets, that it was out of repair. The evidence tended to show that, while there were several planks loose immediately where the accident occurred, the easterly end of the walk, beginning about 25 feet from that spot, and extending about 25 feet to Michigan avenue, was in a worse condition. The court was and still is of the opinion that plaintiff was not confined to proving the condition of the walk at the exact spot where the injury occurred. Bearing in mind that the duty of keeping this entire walk in repair was cast upon the city, not only by virtue of its charter, but by virtue of its actual ownership of the lot in front of which the walk lay, we think that evidence of the bad condition of this walk anywhere from Michigan avenue to Trumbull avenue was competent. Of course, there should be reasonable discretion exercised in admitting evidence of the condition of the walk near the accident, but we think, in any case, if it be so near the place of accident that a person examining the walk, or responsible for the condition of the walk in that neighborhood, would be likely also to notice the defect at the spot where the accident occurred, it would be competent. In this case there can be little doubt that, had the city performed its duty in repairing the easterly end of the walk, its performance

of such duty would have led to a knowledge of the defect which was the immediate cause of the accident. *Weisenberg* v. *Appleton*, 26 Wis. 56; *City of Ripon* v. *Bittel*, 30 Wis. 614; *Gude* v. *Mankato*, 30 Minn. 256, 15 N. W. Rep. 175; *Aurora* v. *Hillman*, 90 Ill. 61, 90; *Boucher* v. *New Haven*, 40 Conn. 456; *Cusick* v. *Norwich*, Id. 376.

The case of *Ring* v. *Cohoes*, 77 N. Y. 83, cited by the defendant, is not in point. In the case of *McCool* v. *Grand Rapids*, 58 Mich. 41, 24 N. W. Rep. 631, which was an action for injuries received by a horse in stepping on a cobble stone, of which there were several scattered about the streets, Mr. Justice CHAMPLIN, in delivering the opinion of the court, observed, *obiter*, that the proof showed that the horse was injured by stepping upon a single stone, and that the existence of other stones in the street had nothing to do with the injury. The remark was not necessary to the decision of the case, and the question as to the existence of other stones apparently did not arise. We do not understand the learned judge as having decided that the existence of other stones in the street might not have been evidence of notice to the city. But in any event the case is not entitled to great weight as authority, as the judges were equally divided in opinion.

4. That the court erred in admitting the testimony of the witness Austin as to the condition of the walk after the accident. The witness first testified as to the physical condition and state of health of the plaintiff prior to and up to the time of the accident, and, for the purpose of fixing the time when he heard of the accident, he said he went with the plaintiff's husband to the spot where the accident occurred about a week afterwards, and found that the walk had been repaired. We think that the testimony that the walk had been repaired was some evidence tending to show that the walk was out of repair at the time of the accident, and was in the nature of an admission which was competent to go to the jury. If not, the testimony was merely immaterial, and worked no injury to the defendant.

5. That the court erred in refusing to charge that, the act of 1885 having abrogated the common-law liability of the city, plaintiff could not recover; and also that under the act of 1885, if the plaintiff could recover at all, she could not recover to exceed the sum of $1,800.

The history of the law of Michigan upon the question of liability for injuries received upon defective sidewalks may not be out of place here. In *City of Detroit* v. *Blakeby*, 21 Mich. 84, it was held by a divided court that, in the absence of a statute to that effect, the cities of this state were not liable for damages received by defective sidewalks, and that remained the law of the state until 1879, when the first act was passed. The federal courts, however, had felt themselves bound by precedents of the supreme court, and had established a different rule, the consequence of which was that aliens and non-residents were permitted to recover for such injuries when citizens of this state could not do so. In 1879 an act was passed making all townships, villages, and cities liable to persons sustaining bodily injury upon any of the public highways or streets by reason of neglect to keep such highways and streets, and "all bridges,

cross-walks, and culverts" on the same in good repair. In the case of *Detroit* v. *Putnam,* 45 Mich. 263, 7 N. W. Rep. 815, it was held that the act of 1879 did not allow damages for injuries sustained by reason of defective sidewalks. In 1885 an act was passed to amend the act of 1879, in which the word "sidewalk" was inserted with the words "highway, street, bridge, cross-walk, and culvert," and new sections were introduced, limiting the amount of recovery upon the basis of population, and providing that "the common-law liability of townships, villages, and cities in this state for such injuries is hereby abrogated." This act was approved June 17, 1885, but did not take effect until August 17th.

The accident in this case took place November, 1883; suit was begun September, 1884; and in June, 1885, the case was first tried upon plea to the jurisdiction. We think it clear that the act should be construed as prospective only in its operation. There were doubtless many other cases pending in the federal courts and in the courts of the state at the time this act took effect, and, if it were intended that the act should apply to these cases, no doubt the legislature would have so declared. Not only is there nothing in the act indicating that its operation was intended to be retroactive, but it was not even given immediate effect, as would almost certainly have been the case if it had been intended to operate upon actions already commenced, or causes of action theretofore accrued. We understand the law to be well settled, as stated by Mr. Justice Cooley in his Constitutional Limitations, 370, that "it is a sound rule of construction to give a statute a prospective operation only, unless its terms show a legislative intent that it should have a retrospective effect." See, also, *Clark* v. *Hall,* 19 Mich. 369; *Smith* v. *Auditor General,* 20 Mich. 398; *Harrison* v. *Metz,* 17 Mich. 377.

Indeed, we consider it extremely doubtful whether, if the law were intended to be retroactive, it would not be in conflict with the constitution. *Kay* v. *Railroad Co.,* 65 Pa. St. 269. Wood, Retroactive Laws, § 172, and cases cited; *Bucher* v. *Railroad Co.,* 131 Mass. 156; *Frasier* v. *Tompkins,* 30 Hun, 168.

6. That the court refused to give defendant's third request, under which it claimed immunity, because the property in front of which the accident happened was in the custody and power of the police commissioners. The facts were that the entire lot and the station-house standing thereon belonged to the city, and was in charge of the police department. The witness Robinson testified that the vacant part of the lot was a sort of lawn, which the police also had the care of; that the sidewalks were put down by the city; and there was no evidence that the police department laid the walks or assumed the care of them. It is true the police commissioners are appointed by the governor, and may perhaps be considered the officers or agents of the state rather than of the city; but the station-houses they occupy remain the property of the city, although within the custody and control of the police. Had this accident happened by the negligence of the police as custodians of such property, it is entirely possible that this action would not have lain against the city; but Church street, upon which the accident occurred,

is one of the public thoroughfares, which it is the duty of the city to keep in repair the same as all other streets, and this duty is not lessened by the fact that the lot in front of which this walk was laid was occupied by agents of the state, any more than it would have been if occupied by a private individual. The walk was originally laid at the expense of the city, and it was peculiarly incumbent upon the defendant to keep it in repair. By section 307 of the charter it is provided that the board of public works, a recognized agent of the city, shall supervise the grading, repairing, and improving of all streets within the city, and by section 308 that they shall supervise the laying down of all sidewalks and cross-walks. No exception is made of streets upon which police stations are located, or of the sidewalks opposite such station; nor is it anywhere provided that the police commissioners shall either pave the streets, build sidewalks, or repair them in front of their stations. We understand it to be the law that where authority is given to repair streets and sidewalks, and means are furnished to make the repairs, the corporation is charged with the duty, and upon it rests the liability for damages consequent upon this neglect of duty. Cooley, Torts, 625.

In *Barnes* v. *District of Columbia*, 91 U. S. 540, it was held that the District of Columbia, as a municipal corporation, was liable for injuries caused by the defective condition of its streets, although the streets were by act of congress placed under the control of a board of public works appointed by the president, and removable by him; the court saying that such a board was not an independent organization, but represented the municipality, although the municipality had no voice in the appointment of its members. This is a much stronger case against the defendant than the present one. See, also, *Rehberg* v. *Mayor*, etc., 91 N. Y. 137.

7. That the court refused to charge that plaintiff was guilty of contributory negligence upon her own testimony, and that of Bateson and Moore.

This testimony, putting it in its strongest light for the defendant, shows that she walked along the street from Michigan avenue without paying any attention to the walk; that it was notoriously rotten, so that any one could see the earth beneath the planks. The witness Moore states that the dangerous condition of the walk could be seen from Michigan avenue without going on to Church street. The testimony, however, shows quite clearly that the worst part of the walk was at the easterly end, from 25 to 50 feet east of the spot where the accident occurred. At this spot there seems to have been a hole in one side of the walk, and several planks loose, so that the defect was visible to a person passing. While this evidence undoubtedly tends to show contributory negligence, we do not think it so conclusive as to have justified the court in directing a verdict for the defendant. There are undoubtedly cases of this kind where this course may be properly taken, and in several actions of this description we have felt justified in directing a verdict for the defendant upon this ground; but the evidence ought to be so clear as to withdraw the question from the region of reasonable doubt. For instance, if this

accident had occurred to Bateson, who made use of this walk three or four times a day for months before, and to whom its condition was notoriously defective, so much so that he and his wife were accustomed to walk there in single file, we should have felt authorized to withdraw the case from the jury upon that ground; but the plaintiff here was not acquainted with the walk, was carrying a large market basket on her arm at the time, and had never had her attention directed to its condition.

It also appears to us very doubtful whether, admitting her guilt of negligence, such negligence could in any just sense be said to have proximately contributed to the accident. She had passed over the most dangerous portion of the walk, and was tripped up, not by stepping upon a rotten plank herself, but by the act of Bateson in stepping upon one end, and thus causing the other end to spring up directly in front of the plaintiff. This was not her fault. Even if she knew the sidewalk was unsafe, this would not, in an ordinary case, be conclusive evidence of contributory negligence. Whart. Neg. §§ 402, 403; *Lyman* v. *Hampshire*, 140 Mass. 311, 3 N. E. Rep. 211; *Gilbert* v. *Boston*, 139 Mass. 313; *Whittaker* v. *West Boylston*, 97 Mass. 273; *Looney* v. *McLean*, 129 Mass. 33; *Weed* v. *Ballston Spa*, 76 N. Y. 329; *Dewire* v. *Bailey*, 131 Mass. 169; *Lowell* v. *Watertown*, 58 Mich. 568, 25 N. W. Rep. 517.

There is also a recent English case, the name of which has escaped me, in which it was held that a passenger upon a sidewalk was not ordinarily bound to look at the walk, but was entitled to presume that it was in good condition and repair.

8. That the court called the attention of the jury to the fact that the accident occurred in front of the police station, and within sight of the officers whose duty it was to have charge of the station. This instruction was justified by the testimony of the witness Moore, (himself a policeman,) who swore that it was a part of his duty as policeman to take notice of these defects, and report them to the board of public works or to another agent, whose duty it was to see the sidewalks were in a proper condition. This testimony was not only uncontradicted, but was not objected to, and we think is sufficient upon this point. While neither the city charter nor ordinances may have imposed this duty upon the police, if, in administration of the city government, it was the practice of the police to notify the board of public works of the existence of these defects, the court might properly call the attention of the jury to it. If there was any portion of the sidewalk which it was the peculiar duty of the city to keep in repair, it was in front of their own property, and within sight of the officers who made it a part of their daily duties to report these defects.

9. There was no error in submitting the question to the jury whether the plaintiff had been guilty of contributory negligence in failing to send for a physician sooner, nor in the illustration which was put to the jury as pertinent to this question. The plaintiff was a mature, but not an old, woman; had always enjoyed excellent health, and the pain she suffered when she first returned home was not such as to excite any alarm. Had she been a physician herself, or a person of greater age or experience in

these matters, the evidence of negligence would have been stronger, but it is very clear it should not have been taken from the jury.

10. There was no error in charging that the burden of proof of contributory negligence was upon the defendant. This was settled in *Railroad Co.* v. *Gladmon,* 15 Wall. 401; in *Secord* v. *Railroad Co.,* 18 Fed. Rep. 221; and in *Conroy* v. *Oregon Const. Co.,* 23 Fed. Rep. 71. There is nothing inconsistent with this case in *Hayes* v. *Railroad Co.,* 111 U. S. 228, 4 Sup. Ct. Rep. 369.

11. Considering the physical wreck of the plaintiff, the damages were not excessive; at least not so excessive as to justify the court in setting aside the verdict upon that ground.

The motion for a new trial must be denied, and judgment will be entered upon the verdict.