## City of Beardstown v. Lou Smith.

1. MUNICIPAL CORPORATIONS—*Duty as to Streets and Sidewalks.*— The law requires a municipal corporation to use ordinary care to keep its streets and sidewalks in a reasonably safe condition. But a person who travels over them has no right to walk recklessly into danger.

City of Beardstown v. Smith.

2. Error—*What Can Not be Assigned.*—A party can not assign for error an error in an instruction which he has, himself, induced the court to commit. substantially, in another instruction.

3. Objection to Evidence—*When Abandoned.*—Where an objection to a question was erroneously overruled, but the question in substance being repeated, no objection was made, and the witness was cross-examined upon the same subject, *it was held* that the objection was abandoned.

4. Expert Testimony — *Impeachment.* — Where a physician was shown to be competent to testify as an expert, being a graduate in medicine and in active practice for fifteen years, *it was held* that evidence that he had been sued for malpractice and adjudged guilty and that his professional standing was not good, had no tendency to impeach his veracity or his memory.

5. Examination of a Party—*Court's Power to Order.*—A court has no power to make or enforce an order that the plaintiff submit to an examination of his person by a physician.

Memorandum.—Action for personal injuries.   Appeal from the Circuit Court of Cass County; the Hon. Lyman Lacey, Judge, presiding. Heard in this court at the May term, 1893, and affirmed.   Opinion filed October 28, 1893.

The statement of facts is contained in the opinion of the court.

Mills & McClure, attorneys for appellant.

Baily & Holly, and Henry Phillips, attorneys for appellee.

Mr. Justice Pleasants delivered the opinion of the Court.

Adams street, in Beardstown, runs north of west and south of east and is crossed at right angles by Fifth.   There was no artificial crossing of the latter on the east side of the former, nor sidewalk on either of the blocks next north and south, but a beaten and continuous path along both and across Fifth was commonly used as such by foot-passengers. The city cut a short ditch beginning on the south side of Fifth and along it, and ending at a catch basin over an underground sewer on Adams, to conduct the surface water. Its dimensions are variously stated by witnesses having dif-

ferent means of judgment. The evidence tends to show it
was about eighteen inches in depth at the basin, running
back with an upward incline some five feet to the surface, a
little over two feet in width, floored and walled up on both
sides with rock, the top course of which was hammered
square, and left uncovered. It was cut directly across the
foot path and at that point was about fourteen inches in
depth. Both the path and ditch were there somewhat ob-
scured by weeds.

Between half past eight and nine o'clock in the night of
September 25, 1891, appellee, returning along the path by
the direct route to her residence, stepped into this ditch and
fell; and for the injury and damage alleged to have been
thereby sustained, recovered in this action a judgment be-
low on a verdict for $2,250.

Appellant sought a new trial there and asks for a reversal
here on the grounds, among others, that whatever injury
she sustained by the fall is due to her own failure to use
ordinary care for her safety and not to any negligence of
appellant; that the fall was the proximate cause of only a
small part of the pain, sickness and disability she has since
suffered, and the damages awarded her are grossly excessive.

Ordinarily, where the proof seems to us insufficient to sup-
port the finding, we feel it due, at least to the appellant or
defendant in error, to discuss it fully enough to show the
reasons for our conclusion. But where it appears to have
fairly made a question for the jury, such a discussion, as a
rule, is of little interest and less advantage to anybody.
Having considered the evidence upon these issues in this
case, and being satisfied that upon each it did so present
such a question, we shall not refer to it further than may
be necessary in noticing the other errors assigned.

Of these the first is the refusal of the following instruction :
" If the jury find from the evidence that the plaintiff was
guilty of any negligence, however slight, which contributed
to the alleged injury complained of, then the jury must find
their verdict for the defendant, unless the jury further find
from the evidence that the defendant was guilty of negli-
gence, which in comparison with plaintiff's, was gross."

If from this the jury should understand, as they well might, that "any negligence, however slight," included a degree which might still consist with ordinary care, they would be materially misled as to the law; and if they would understand by it a degree of negligence greater, however slightly, than would consist with ordinary care, the instruction asked was worse than useless to the defendant who asked it, being less favorable to it than were those asked and given for the plaintiff—all of which were to the effect that in that case the plaintiff would not be entitled to recover for any degree of mere negligence on the part of the defendant, however gross, comparatively or absolutely, which is clearly the law. And that is just the dilemma which must confront every instruction that attempts to invoke the rule of comparative negligence, as it is claimed the Supreme Court introduced and for a long time maintained it. Counsel cite no case in defense of this instruction later than that of the Town of Grayville v. Whitaker, 85 Ill. 439. We do not see how it can be defended against the reasoning and judgment in C., B. & Q. R. R. Co. v. Johnson, 103 Ill. 512, and the cases following it. We think the instruction was rightly refused.

Two others asked were refused, which we do not copy, because of their length, and because counsel themselves describe them as "instructions which in substance directed the jury that municipal authorities are vested by the law with a certain discretionary power in deciding where street crossings shall be put in, and that unless such discretion is shown to have been abused, municipalities are not liable for damages resulting wholly from the absence of such crossings." These were inapplicable and misleading. By implication they assumed that the negligence complained of was the neglect to put in an artificial crossing at Fifth street on the east side of Adams. Neither of the four counts contained any such complaint. Each charged the wrong to be that the city spoiled a safe crossing made by use, by cutting this ditch through it and neglecting to cover or guard it, or properly light it at night; and all the evidence offered went to sustain the charge so made.

In several instructions for plaintiff touching the duty of the city in the premises, " streets " were put in the same category with " sidewalks and crossings; " and it is said, upon the authority of City of Aurora v. Hilman, 90 Ill. 61, and the City of Lacon v. Page, 48 Ill. 499, that they do not belong there, and that as the city had not constructed a crossing at the place where plaintiff fell, and there was evidence tending to prove it was not " generally " used as such, these instructions were improper.    There was a cinder crossing on Fifth street on the west side of Adams, and it may well be that it was more generally used than the path in question, but there is no contradiction of the proof that there was a plain, beaten path over the east side of Adams which was quite commonly used as a crossing.    The public, so far as appears, did not complain of the want of an artificial crossing there, and the city did not complain of the use of the path for that purpose.    It would have been entirely safe if let alone, and being known to be so used, the city was bound to take reasonable or ordinary care not to change it from a safe to a dangerous condition.    We think that for all the purposes of this case it was a crossing; and since the allegation and proof were confined to it, the instruction as to " streets " if erroneous, could not have done any harm.    Besides, several of the instructions for defendant are to the same effect.    The language of the fifth is that " while the law requires a municipal corporation to keep its streets and sidewalks in a reasonably safe condition, yet a person who travels over the streets or sidewalks has no right, recklessly, to walk into danger."    And that of the fourth is " that the defects in the streets or sidewalks of a city, to make the corporation liable, must be of such a nature," etc.    So of the eighth.    A party can not assign for error an error in an instruction which he has himself induced the court to commit, substantially, in another.    Calumet Iron & Steel Co. v. Martin, 115 Ill. 366–7; Northern Line Packet Co. v. Bininger, 70 Ill. 575.

If, as above said, the " path " may properly be regarded as a crossing, it disposes of the objection to the seventh instruction for plaintiff.

On her direct examination she was asked: "What were you receiving for your work while you worked?" and answered: "I received fifty cents a day while I was working for the Misses Hinton. I had made arrangements to go into business in Roodhouse for myself, by which I could have made $2.50 per day for my work." This last statement was objected to, and the court was asked to rule it out, but refused, and exception was taken. The next question was: "You may state what you could have earned if it had not been for this accident;" and answered: "I could have earned $2.50 per day," to which no objection was made. To the next question, "Have you been able to earn anything since?" she answered, "No, sir."

The record of her cross-examination is as follows: "Tell this jury how you were going to earn this $2.50 a day? A. By dress-making. Q. Did you ever earn $2.50 a day at dress-making? A. Yes, sir. Q. Where at? A. In Roodhouse. Q. How much did you get when you worked by the day? A. Fifty cents. Q. You say you earned more at Roodhouse? A. Yes, sir. Q. Why did you come down to work for fifty cents? A. That was because I was called home at the time my sister got married. Q. And you continued to work for fifty cents a day when you could make $2.50 a day? A. Yes, sir. I was not ready to go into business for myself."

The special damages claimed in the declaration covered only the hindrance to her business and expenses incurred to be cured. What she would have made by the special arrangement referred to in her statement was, therefore, not properly admissible under the pleadings, nor was her estimate or opinion of what she would or could have so earned. It should have been ruled out on the objection made. City of Chicago v. O'Brennan, 65 Ill. 160. But it was "necessary to inquire into the ability and capability to labor or carry on business prior to the injury, for it is manifest that what would be compensation would be greatly in excess of what another should recover, and inadequate to compensate still another," as was said by the

Supreme Court in City of Joliet v. Conway, 119 Ill. 492.
To show her "ability and capability to labor and carry
on business," in order to ascertain what would be a fair
compensation for its prevention, is to show the reason-
able value of her labor in such business.   When it is of a kind
that is paid for in wages, the usual amount per day, week or
month is easily ascertainable as a fact; but in other cases it
is matter of opinion, and therefore opinion is as competent
evidence in such cases as is knowledge in the others.   This
statement objected to was not responsive to the question,
and also was incompetent, not because it was an opinion as
to what she could have made, but because it was what she
could have made by special arrangement to go into business
for herself, the loss of which would be special damage, not
alleged in the declaration.   But the next question was with-
out reference to any special arrangement, How much could
you have earned if it had not been for the accident ? and the
answer was the same — $2.50 per day.   No objection was
made to this question or answer.   Counsel accepted it and
cross-examined upon it as general and competent, without
any inquiry as to the special arrangement, what it was,
whether partnership or not, how much capital it required
and how much she had, or anything else in relation to it.
This may be considered as an abandonment of the objection,
since the statement complained of was the same as the an-
swer which was received without objection, and could do no
more harm.   Nor do we think that the jury could have been
influenced by either.   The fact she stated was that she
worked by the day and got fifty cents for it, while her opin-
ion was that if she had gone into business for herself, with
the necessary capital and ability to conduct it, without any
experience, she could have made out of that capital, labor
and ability as much as $2.50 per day; but she was called
home by the marriage of her sister, and was not ready to go
into business for herself, whether because of her injury, or
for want of the necessary capital, or for what other reason,
if any, does not appear.   It is not to be presumed that such
an opinion, of a party to the suit, in her own interest, could

City of Beardstown v. Smith.

have had any weight with the jury as against the fact that in her actual business she received only fifty cents a day.

Dr. Lang treated appellee professionally, and testified on her behalf to some facts he claimed to have observed, and upon some other points as an expert. Appellant offered to prove by him, that he had been sued for malpractice, and adjudged guilty; and also, by Dr. King, that his professional standing was not very good; all of which, on objection made, the court excluded.

That he was competent to testify as an expert, was established by proof that he was a graduate in medicine, and had actively pursued its practice for fifteen years. The evidence offered would have had no tendency to impeach his veracity or his memory, and we know of no rule under which the mere weight of an expert's testimony can be affected, one way or the other, by proof of his general reputation for skill or judgment, or knowledge in his art or profession. That can be done only by dealing directly with the particular opinions and statements in question.

The court was asked to order the plaintiff to submit to an examination by a physician, under proper restrictions, but refused. This ruling was proper. " The court had no power to make or enforce such an order." Parker v. Enslow, 102 Ill. 279; C. & E. I. R. R. Co. v. Holland, 18 App. 422-3.

Lastly, it is urged that the verdict should have been set aside, for alleged misconduct of a juror, in associating with the plaintiff during the progress of the trial. The alleged association consisted in his walking with her on one occasion, a part of the way, being a short distance—from the court house to their common boarding place. Unexplained, this might have been regarded as a serious matter. The affidavits filed in support of, and opposition to the motion, fully disclose the circumstances, and in our opinion relieve it of all suspicion of wrong in its purpose, or injury in its effect. It would be useless to go into the details.

Seeing no material error in the record, the judgment will be affirmed.