(No. 4798)

MARY BARRETT, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed July 24, 1959.*

KEVIN D. KELLY, Attorney for Claimant.

LATHAM CASTLE, Attorney General; SAMUEL J. DOY, Assistant Attorney General, for Respondent.

WHAM, J.

Claimant, Mary Barrett, brings this action to recover $7,500.00 in damages for injuries to her person, which she sustained on November 21, 1956 in a fall on the public highway in Utica, Illinois, while crossing from the east to her home on the west side of Illinois State Route No. 178.

The facts are relatively undisputed, and are as follows:

Mary Barrett, claimant, was 67 years of age at the time of the hearing. She is a widow, and resides with her two sisters in a house about four blocks south of the business district of Utica, Illinois. The house is on the west side of Illinois State Bond Issue No. 178, and is within the city limits of Utica. There are houses on both sides of the road in the vicinity of the accident.

The day on which the accident occurred, November 21, 1956, was clear and bright. About 11:00 A.M. on the aforesaid day, claimant had gone to the business district in Utica to do grocery shopping for the household. She obtained her merchandise, and placed it in a shopping bag with a handle on it.

She walked in a southerly direction along the easterly side of the highway to a point 30 to 70 feet north of the place of her residence. When the traffic permitted, she crossed over the highway. On the westerly half thereof she stepped into a hole about 8 inches by 18 inches in size, and 2½ to 3 inches in depth. She did not see the hole before she stepped into it, but looked back after she fell and was being carried off the pavement. The hole was also described by the person, who carried her off the pavement.

According to claimant, she was looking ahead, did not see the hole, and didn't know it was there until she caught her heel. Mr. Snell was called by Mr. Fitzgerald to aid in carrying claimant to her home. The witness Snell, who knew Mrs. Barrett very slightly, stated the hole was 24 inches long by 12 inches wide, and 2 or 3 inches deep. The hole was near the west edge of the highway. This witness drove highway No. 178 about once a week. He said that the road was in a very choppy condition in this area. He stated that he did not notice any loose concrete or gravel near this hole, and that, therefore, in his opinion, the hole was not fresh. He estimated it to be a couple of months old. According to Mr. Snell, claimant was lying very close to the hole, which had caused the fall.

Following the removal of claimant from the highway by Mr. Snell, she was taken to the Ryburn-King

Hospital in Ottawa, Illinois, where she was placed under the care of Dr. H. E. Stewart, who took x-rays. The doctor determined that there was a fracture of the left leg at the upper end of the femur, just below the head thereof. A cast was applied to both legs, and claimant was in a full hip and leg cast for a period of about 2½ months. After the cast was removed, therapy was applied, and claimant was released from the hospital on February 22, 1957. She was on crutches for a period of six weeks after her release from the hospital, and thereafter she used a cane for a number of weeks. On the day of her last examination by Dr. Stewart, which was June 27, 1957, and also at the date of the hearing, May 12, 1958, claimant walked with a limp. Dr. Stewart described the limping condition as permanent. In Dr. Stewart's opinion, claimant sustained a 20% loss of motion in the hip joint. In addition to the fracture, claimant suffered considerable pain. According to the doctor, claimant, due to shock, was mentally confused for several days after. the accident. Claimant's hospital bill amounted to the sum of $1,417.30, and her doctor bill was $150.00. In addition to the aforesaid medical expenses, claimant paid $10.00 to the Hulse Funeral Home, $10.00 to Gladfelters, and $41.00 for eye glasses, which were broken in the accident. At the time of the accident, claimant was employed as a housekeeper by her sisters at the rate of $20.00 per week, plus her room and board.

From these facts we conclude that claimant is not entitled to recover for two reasons:

First, the facts do not establish a duty upon the State to maintain that particular portion of the highway for pedestrian travel. Although it is true that the State and municipalities must maintain crosswalks at inter-

sections in a reasonably safe condition for pedestrian travel, it does not follow that either the State or municipalities must maintain the entire public highway under their respective jurisdictions in the same manner and condition that a sidewalk or crosswalk should be maintained. To so require, would be to place an impossible burden upon the State and municipalities.

This accident did not occur on a sidewalk or crosswalk. It occurred at a point in the highway nowhere near an intersection. This hole was located on Illinois State Route No. 178, and was several blocks from the business district of Utica, Illinois. There is no evidence that the point at which the accident occurred was more likely to be used by pedestrians than any other part of the highway outside of the business district. Although there is a showing that residences were located on either side of the highway, it is no less true that, throughout the highway network of the State, farm homes lie across the road from one another. The fact that the State could reasonably assume that people would cross the road to visit one another is no more reason for the State to be required to maintain the highway as a sidewalk at the point of the accident, than it would be to so maintain the highway throughout the rural areas of Illinois.

Likewise, the fact that claimant had a right to walk anywhere on the State highway, which she chose in going to and from market, does not place a duty upon the State to prepare the way for her as a pedestrian.

Utica is a village of approximately one thousand persons. What would be reasonable to require of the State or a municipality in a large city is not the test here

In the case of *Boender* vs. *City of Harvey*, 251 Ill. 228, at pages 230 and 231, the court stated:

"* * * Municipal corporations are not insurers against accidents. The object to be secured is reasonable safety for travel considering the amount and kind of travel, which may fairly be expected upon the particular road or street. A highway in the country need not be of the same character as a street in a large city. (*Molway* vs. *City of Chicago,* 239 Ill. 486.) * * * only duty cast upon the city is that it shall maintain the respective portions of the street in a reasonably safe condition for the purposes to which such portions of the street are devoted."

Claimant cites no case that places a duty upon the State to maintain the entire street for pedestrian traffic. The case of *Graham* vs. *City of Rockford,* 238 Ill. 214, relied upon by claimant, involved a crosswalk at an intersection.

The case of *Maxey* vs. *City of East St. Louis,* 158 Ill. App. 627, also relied upon by claimant, was one wherein the pedestrian was injured when she stepped from a street car to the public street. The court in that case held that the city was under a duty to maintain that portion of the street for pedestrian travel, inasmuch as the city had granted the street railway company a franchise and street privileges, and had, therefore, devoted such place at which the pedestrian would alight from a street car for use by pedestrians. At page 630, the court stated:

"* * * To hold otherwise would deprive the public of the use of street cars, or compel them to alight and walk on the street at such places at their own risk without regard to whether or not they were reasonably safe for such use."

The court recognized the distinction between the situation presented there, and that presented in the instant case. At pages 629 and 630, the court stated:

"It is insisted by the appellant that there is no liability against the city in this case, because the hole or depression was not in any sidewalk or crossing of the city, and that it is under no legal obligation to keep the driveway of its street longitudinally in a fit and safe condition for pedestrians. It was said in substance in *City of Aurora* vs. *Hillman,* 90 Ill. 61, and in *The Pres. and B'd. of Trustees of Harvard* vs. *Senger,* 34 Ill. App. 223, that a city is not bound to keep its whole street fit and safe for foot passengers. If this must be accepted as the general rule of law, still we think that under the holding of our courts that there are exceptions to the rule. A city may

reserve portions of a street for pedestrians, portions thereof for the use of vehicles only, and portions thereof for both pedestrians and vehicles. Sidewalks are usually made for pedestrians only, and street crossings for both pedestrians and vehicles. Cities are required to use reasonable care to keep street crossings in a reasonably safe condition for pedestrians while in the exercise of reasonable care and caution. This is not denied by appellant. The true rule in all cases, we think, is that a city is only required to maintain the respective portions of its streets in a reasonably safe condition for the purposes to which they are respectively devoted by the intention and sanction of the city. *Kohlhof* vs. *The City of Chicago*, 192 Ill. 249; *Town of Normal* vs. *Bright*, 223, Ill. 99; *City of Beardstown* vs. *Smith*, 150 Ill. 169."

In *City of Aurora* vs. *Hillman*, 90 Ill. 61 at page 64, the Supreme Court stated:

"* * * The sidewalk was intended for foot passengers, and the carriageway in the street was intended for horses and vehicles. It is true that pedestrians would have a right to cross over the street or road, and their right to do so, at least at the usual street crossings, would be equal to that of persons with teams to drive along the street, and cities are bound to keep such crossings in a safe condition; but we are not prepared to hold a pedestrian has an equal right with one who drives a carriage to travel in and along the driveway of a public street, or that a city is under any obligation to keep such driveway, longitudinally, in a fit and safe condition for pedestrians."

Under the evidence in this case, we find that the State did not owe the duty to claimant, as a pedestrian, to maintain the street at the point where she crossed for pedestrian travel.

Secondly, claimant has failed to establish that she was in the exercise of ordinary care for her own safety at the time of her injury. If the hole was as large as she and her witness stated it to be, then there appears to be no good reason why she should not have seen it prior to stepping in it.

It was a sunny day, she was not hindered in seeing the hole by anything, she had traveled practically the entire width of the road before stepping into the hole, and she had traveled the particular route almost every day prior to the injury over an eight year period.

She was not looking at the pavement, as she walked across the road. There was no particular reason why she

crossed the highway at a point some 30 to 70 feet north of her residence, which was the location of the hole. There was more than sufficient space between the place she did cross and her home for her to have walked in safety had she given attention to selecting her path.

Although it was not negligence per se for claimant to cross at the place she did, and although the Supreme Court of this State in *Swenson* vs. *City of Rockford,* 9 Ill. (2d) 122, held that the question of contributory negligence in such an instance would probably be one for the jury to determine rather than as a matter of law, as counsel points out in claimant's brief, we believe that, taking all of the facts and circumstances into consideration, claimant should have observed this hole in the road and avoided it.

By not doing so, we feel that the facts in this case indicate that by her own lack of due care claimant proximately caused her injury.

For the above reasons, the claim is hereby denied.